In re the MARRIAGE OF Amanda Dawn COCHRAN and Stephen Wayne Cochran.

Amanda Dawn Cochran, Petitioner–Appellant,

v.

Stephen Wayne Cochran, Respondent–Respondent.

No. SD 30711.

Missouri Court of Appeals, Southern District, Division One.

April 27, 2011.

Mary L.D. Griffith, Sikeston, MO, for Appellant.

No brief filed by Respondent.

GARY W. LYNCH, Judge.

Amanda Dawn Cochran ("Wife") appeals the Circuit Court of Scott County's judgment dissolving her marriage to Stephen Wayne Cochran ("Husband"). Wife raises three points on appeal: first, that the trial court erred in awarding the bulk of a lump-sum settlement to Husband as nonmarital property because Husband failed to establish by clear and convincing evidence that any portion of the settlement

was non-marital property; second, that the trial court improperly modified Husband's summer visitation with the couple's children; and third, that the trial court erred in calculating Wife's and Husband's child support obligations. Finding no merit in Wife's first two points and dismissing her third point, we affirm.

### Factual and Procedural Background

Husband and Wife were married on January 2, 1999, in Sikeston, Scott County, Missouri. Two children were born of the marriage.

Husband was injured on October 24, 2005, while working as a welder for Union Pacific Railroad ("Union Pacific"), injuring his ankle, knee, and back. During the course of, and to facilitate, Husband's medical treatment for these injuries, the couple spent approximately $7,000.00 on gas, food, hotel stays, prescription medications, and various other expenses.

In January 2006, Husband filed a Federal Employees Liability Act ("FELA") lawsuit against Union Pacific. Due to the nature and severity of Husband's injuries, Husband never returned to work for Union Pacific, and he was eventually deemed permanently totally disabled by the Social Security Administration.

Husband and Wife separated on September 28, 2007. Wife filed a petition for dissolution of marriage on October 23, 2007. The following February, Husband and Wife attempted to reconcile but separated again in March.

On October 1, 2008, the trial court entered an injunction and restraining order against Husband and ordered that any proceeds from Husband's pending FELA lawsuit be placed into a restricted or trust account until the trial court determined the appropriate distribution of any such funds. Husband's FELA case was settled on March 6, 2009. Union Pacific paid $800,000.00 to Husband's attorneys in the FELA action, who in turn retained $200,000.00 for their fees and $65,357.65 for reimbursement of their litigation expenses. They further paid the Railroad Retirement Board $14,690.00 for reimbursement of benefits paid to Husband pursuant to the Railroad Unemployment Insurance Act, and $15,799.30 for reimbursement of supplemental sickness benefits. The remaining $504,153.05 was put into the attorneys' trust account pursuant to the trial court's order.

On April 8, 2009, the trial court ordered Husband to provide both it and Wife with discoverable information pertaining to Husband's FELA settlement, his FELA claim, and his future gross income. Husband did not provide such information.

Husband filed a motion to quash the injunction and restraining order on August 28, 2009. In that motion, Husband requested that the trial court order the FELA settlement funds distributed to him as non-marital property, minus $15,000.00 that he conceded was marital property pursuant to the FELA settlement agreement.[1] The trial court conducted a hearing on November 23, 2009, and issued its ruling December 14, 2009. The trial court granted Husband's motion in part and denied it in part, finding that all of the FELA settlement funds were de facto marital property, as they had been received during the marriage, but that it had insufficient evidence before it at that time to determine what portion of the FELA

---

1. According to the General Release executed by Husband in the FELA settlement, the proceeds of the settlement, minus $15,000.00 attributed to lost wages, were to compensate Husband for past and future pain and suffering.

settlement funds was non-marital.[2] After ordering that Husband be paid $15,000.00 from the settlement funds, and that various individuals and entities be paid an aggregate sum of $23,771.33, the trial court then ordered that the remaining FELA settlement funds—$465,381.72—be divided between two interest-bearing accounts—one at Southern Missouri Bank & Trust Company and one at First State Bank & Trust—with all interest to be evenly split between Husband and Wife; the funds were to remain in those accounts until further order of the trial court.

On January 15, 2010, the trial court entered an order granting Husband fourteen days within which to obtain the reports of all experts retained by Husband in his FELA action and another seven days within which to forward such reports to Wife. In its order, the trial court advised Husband that any expert report not submitted to Wife within the time constraint set by the order would be deemed inadmissible at trial. The trial court further gave Husband twenty-one days from the date of the order to designate any planned expert witnesses; following Husband's designation, Wife was given ten days to advise Husband of any expert she wished to depose. Husband failed to provide any expert reports pertaining to his FELA action and likewise failed to designate any expert witnesses.

Trial on the petition for dissolution took place March 12, 2010. Although Husband attempted to introduce reports from a vocational rehabilitation expert and an economic expert, the trial court did not allow the reports to be admitted pursuant to its order of January 15, 2010.

At trial, Wife requested that the trial court award her one of the interest-bearing accounts holding half of the remaining proceeds from Husband's FELA settlement. Wife also requested that she be awarded $7,182.00 in reimbursement for travel and medical expenses incurred during Husband's treatment. Husband asked that the trial court award him all of the FELA settlement money, minus one-half of the $15,000.00 he received as back pay and which he conceded was marital property.

Also at issue was Husband's summer visitation with the couple's two minor children. Wife asked that Husband's summer visitation be limited because of Husband's physical limitations, his medication, and his relative isolation from family members. Husband testified that, ultimately, he feels he is "100 percent" capable of taking care of the children without assistance, and he requested two weeks per month during the summer. The children's court-appointed guardian ad litem recommended that Husband have summer visitation at least one week per month during the summer.

The trial court took the matter under advisement and entered its judgment of dissolution on April 30, 2010. Regarding Husband's visitation, the trial court granted a total of three ten-day periods during the summer between June 10 and August 15. It also found, using Missouri's "analytic approach," that only $15,000.00 of the FELA settlement proceeds was considered marital property and the remainder of the funds was Husband's non-marital property. Before such funds were distributed to Husband, however, the trial court ordered Husband to pay off the outstanding principal balances on promissory notes pertain-

**2.** In its discussion on the sufficiency of the evidence before it, the trial court specifically noted the lack of evidence regarding Husband's work history, the complaint filed in his FELA action, the reports written by economic and vocational experts hired by Husband in the FELA action, and the findings and decision of the Social Security Administration.

ing to a home equity line of credit secured by the couple's residence that was awarded to Wife and a Keystone Cougar recreational vehicle that was awarded to Husband. He was also ordered to pay Wife $1,474.61 for medical expenses for the children, and to pay the guardian ad litem $2,700.00. Wife received the accrued interest on the Southern Missouri Bank & Trust Company account. The trial court determined Husband to have monthly Social Security disability income totaling $1,178.10,[3] as well as a projected monthly interest income on the proceeds of the FELA settlement of $1,000.00, for a total monthly income of $2,178.10. It determined Wife to have gross monthly earnings of $4,673.00. Husband was ordered to pay Wife $514.62 per month in child support through August 2010; that amount decreased to $429.84 per month as of September 1, 2010.[4] Husband was also ordered to pay back child support in the amount of $2,263.00.[5]

Wife filed a "Motion to Set Aside Judgment and for Rehearing or, in the Alternative New Trial, or to Amend the Judgment" on May 4, 2010. In that motion, Wife challenged, among other things, the trial court's determination of marital and non-marital property, requested that the FELA settlement proceeds themselves—not just the interest earned thereupon—be used in calculating Husband's gross income, and asked for a clarification of Husband's summer visitation schedule. Wife noted that the summer visitation schedule—in which both parties had three "periods" of time with the children, with each period beginning on a Friday and ending on the second Sunday thereafter—could not be complied with, as there are only five such periods between the prescribed dates of June 10 and August 15.

Following a hearing, the trial court issued an amended judgment of dissolution on July 19, 2010. While the trial court did not alter its allocation of marital and non-marital property, it did offer an explanation for its determination, stating that it awarded nearly all of the FELA settlement proceeds to Husband as non-marital property

> because Husband has been declared totally disabled, is without medical and hospitalization insurance coverage since, with dissolution of the marriage, he can no longer obtain coverage as a spouse under the policy of medical and hospitalization insurance available to Wife through her employer, and is not awarded hereunder a monthly sum payable to him by Wife for his support and maintenance.

The trial court altered the amount of child support it ordered Husband to pay to Wife, effectively eliminating Husband's obligation to pay back child support.[6] The

---

**3.** Husband's monthly Social Security disability benefits total $1,329.20, from which $96.40 is deducted for medical insurance coverage and $54.70 is deducted for Medicare prescription drug coverage.

**4.** Husband's child support payment was reduced as a result of the elimination of child care expenses due to the couple's youngest child entering school.

**5.** $515.00 per month × 31 months = $15,965.00, less $13,702.00, the amount received by Wife from Social Security for support of the children.

**6.** The trial court decreased Husband's monthly child support obligation for the period of time prior to entry of the trial court's judgment from $514.62 to $404.14, for a total of $12,528.34. The trial court then subtracted $13,702.00, the amount received by Wife in Social Security disability benefits for the support of the children, which left a negative difference. The trial court subsequently ordered Wife to reimburse Husband the $2,263.00 that Husband had paid Wife in back child support under the original judgment.

trial court also altered Husband's summer visitation schedule, increasing his total visitation from three ten-day periods to three two-week periods each summer.

This appeal timely followed.

### Standard of Review

We review a trial court's judgment of dissolution in the same manner as any court-tried case. *Wood v. Wood*, 193 S.W.3d 307, 310 (Mo.App.2006). That is, we will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "We will not retry the case, but rather, accept as true the evidence and reasonable inferences therefrom in the light most favorable to the trial court's judgment, and disregard all evidence and inferences to the contrary." *Ethridge v. Ethridge*, 239 S.W.3d 676, 681 (Mo.App.2007). Furthermore, we defer "to the superior ability of the trial court to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles not revealed in the transcript." *Slattery v. Slattery*, 185 S.W.3d 692, 696 (Mo.App.2006).

### Discussion

Wife presents three points for our review. We address them in the order presented.[7]

### Allocation of Property Supported by Substantial Evidence

■ In her first point, Wife claims:

The trial court erred in determining that with regard to the $465,381.66 held in jointly owned certificates of deposit funded by a personal injury settlement aquired [sic] during the marriage, that only $15,000.00 of funds held in the jointly owned certificates of deposit was marital property, and awarding Husband all of the funds held in the jointly owned certificates of deposit as the non-marital property of Husband because pursuant to the analytic method of classification of property, Husband failed to establish that any of the funds were his separate property by clear and convincing evidence.

(Upper– and lower–case substituted for all capitals in original). We disagree.

■ Missouri uses the "analytic approach" in classifying compensation awards as either marital or non-marital property. *Heslop v. Heslop*, 967 S.W.2d 249, 253 (Mo.App.1998). "Under this approach, the focus is on what the award or benefit is intended to remedy." *Id.* Compensation for loss of wages during the marriage is considered marital; compensation for loss of future earnings and for non-economic damages such as pain and suffering is considered non-marital. *Id.* at 254; *Blydenburg–Dixon v. Dixon*, 277 S.W.3d 815, 820 (Mo.App.2009). That being said, however, a presumption still exists that all property acquired during the marriage is marital. *Heslop*, 967 S.W.2d at 254. The party claiming otherwise must demonstrate by clear and convincing evidence that at least a portion of the compensation proceeds is non-marital. *Buckner v. Buckner*, 912 S.W.2d 65, 69 (Mo.App.1995). Clear and convincing evi-

---

**7.** Husband did not file a respondent's brief in this case. "While no penalty is prescribed for failure to file a brief, we are required to decide the case without the benefit of that party's authorities and points of view." *Reynolds v. Reynolds*, 163 S.W.3d 567, 570 n. 1 (Mo.App.2005). While not filing a brief, Husband has filed numerous motions and correspondence with this Court throughout the pendency of these proceedings. Any motions filed by Husband not previously ruled on are hereby denied.

dence is that which "instantly tilts the scales in the affirmative when weighed against the evidence in opposition," and which leaves the fact finder "with an abiding conviction that the evidence is true." *In re T.S.*, 925 S.W.2d 486, 488 (Mo.App. 1996). As applied to our standard of review, substantial evidence as used in *Murphy* is equivalent to clear and convincing evidence when that measure of proof is used at trial. *In re Adoption of W.B.L.*, 681 S.W.2d 452, 454 (Mo. banc 1984).

Wife contends that, in its order dated December 14, 2009, the trial court classified the entirety of the FELA settlement proceeds—minus specific payments ordered by the trial court—as marital property unless Husband provided specifically designated evidence to the trial court showing otherwise. She further contends that, because Husband failed to provide the trial court with any of the designated documents or information, all of the FELA settlement proceeds must be considered marital property. Wife's interpretation of the trial court's characterization of the FELA settlement proceeds is both selective and inaccurate.

In its order dated December 14, 2009, the trial court acknowledged that, in the absence of clear and convincing evidence to the contrary, the proceeds from the FELA settlement were presumed to be marital property because they were received during the pendency of the marriage. It then went on to state that Husband "has introduced clear and convincing evidence that some portion of the settlement proceeds represents compensation for non-economic damages and that some portion of the settlement proceeds may represent compensation for post-dissolution wage loss[,]" through the introduction of the General Release executed by Husband in the FELA claim and statements made by Husband's attorney at the hear-

ing that took place November 23, 2009. It then placed the remaining funds into two interest-bearing accounts pending resolution of the petition for dissolution. At trial, Husband testified that $15,000.00 of the FELA settlement proceeds were intended for lost wages during the marriage, but that the remainder was intended to compensate him for pain and suffering.

The trial court's final classification and distribution of the FELA settlement proceeds closely mirror the allocation outlined in the General Release: the trial court expressly classified $15,000.00 as compensation for lost wages during the marriage and therefore marital property; it classified the remainder as non-marital property belonging to Husband. Although recognizing its ability to go beyond the allocation outlined in the General Release, the trial court largely adhered to it because "Husband has been declared totally disabled, is without medical and hospitalization insurance coverage since, with dissolution of the marriage, he can no longer obtain coverage as a spouse[,]" and was not awarded maintenance.

Wife emphasizes the trial court's ability, apart from any allocation made by the parties in a release, to create its own determination of marital and non-marital property under the analytic approach, citing *Hatten v. Hatten*, 917 P.2d 667 (Alaska 1996), and *D.K.H. v. L.R.G.*, 102 S.W.3d 93 (Mo.App.2003), both of which the trial court cited in both its order of December 14, 2009, and its final judgment. However, Wife points to no authority mandating that a trial court reach a different allocation than that outlined by a general release; her cited authority merely allows for that possibility. Moreover, Wife ignores the trial court's stated reasoning for largely adhering to the General Release allocation, as well as the trial court's explanation at the hearing on Wife's motion to amend as

to how its classification and distribution *did* actually differ from that in the General Release, if only in effect:

> ... [J]ust a couple comments. Number one, I didn't find that only [$]15,000 of it was marital, A. B, instead of apportioning between the parties [Wife's] 401k, I gave it all to her, as I remember. That was all marital property, as I recall. Not that it was a huge sum but it was all marital. And I ordered [Husband] to pay from the money he was receiving certain debts which from my recollection all of which as I recall were marital, including the balance to [the] second deed of trust on the house and the, although he was getting the recreational vehicle it was a vehicle on which [Wife] was liable in terms of the bank or the finance company.

> And [the guardian ad litem's] fees were to be paid out of that in satisfaction of a judgment which I entered in favor of [H]usband and [W]ife jointly and severally. So I didn't treat the money that I awarded to [Husband] from his settlement as limited to $15,000 in marital portion[.]

Thus, the trial court did, in effect, treat more than $15,000.00 from the FELA settlement proceeds as marital property and effectuate what it considered to be an equitable division of the property given the evidence before it. Ultimately, the trial court relied upon the form of the General Release and Husband's testimony, evidence which was not contested at trial and which is considered substantial evidence. *See Petties v. Petties,* 129 S.W.3d 901, 908 (Mo.App.2004) (workers' compensation settlement sheet was the only evidence presented regarding classification of husband's lump-sum payment). Wife's first point is denied.

### Correction of Summer Visitation Schedule was Appropriate

In her second point, Wife claims:

The trial court erred in modifying its *judgment* that Husband have three (3) weeks of summer visitation with the minor children and increasing Husband's summer visitation to six (6) weeks with the minor children in its *amended judgment* without Husband requesting a modification and without evidence that it was in the best interests of the minor children to increase Husband's summer visitation to six (6) weeks.

(Upper– and lower–case substituted for all capitals in original). Again, we disagree.

In "Petitioner's Motion to Set Aside Judgment and for Rehearing or, in the Alternative New Trial, or to Amend the Judgment," Wife stated,

> 13. Court erred in its *Judgment and Decree of Dissolution* by providing that each party receive three (3) periods of summer visitation with the minor children between June 10th and August 15th of each year, with each "period" beginning on a Friday and concluding on the second Sunday thereafter. However, there are only five (5) "periods" of time between June 10th and August 15th, therefore, it is impossible for this visitation schedule to be complied with.

During the hearing on Wife's motion, the trial court conceded that the summer visitation schedule as outlined in the original judgment was impossible to effectuate and apologized to both parties "for screwing that up." The trial court then asked the parties for input as to what each would like or expect as to summer visitation. Wife suggested keeping the prescribed start and end dates but reducing the number of "periods" received by each parent to two; Husband suggested moving the start date of the summer visitation schedule to mid-May, shortly after the children's

school year ends. Husband also stated his desire to see his children as much as possible. The trial court, for its part, signaled its desire to have each visitation period begin and end on the same days, so as to introduce some routine and pattern to the children's lives, and the guardian ad litem agreed. Finally, the trial court discussed the possibility of shortening each visitation period from ten days to seven, and transferring custody between Wife and Husband every other week for the duration of the summer. Both Husband and Wife agreed to such a schedule, but the trial court expressed concern that such a schedule might involve "too much driving for the kids[.]"

In its amended judgment, the trial court provided the following summer visitation schedule:

> (d) Beginning Summer, 2011, alternate two (2) week periods from 7:30 p.m. Friday until 7:30 p.m. the second Friday thereafter, beginning on the final day of each academic year or, if the final day of an academic year is not Friday, on the first Friday following the final day of each academic year and continuing until the Friday next preceding the first day of the following academic year. . . .

"A trial court is ... empowered to amend, vacate, reopen or modify upon its motion for [thirty] days after entry of judgment." *Carter v. Carter*, 901 S.W.2d 906, 911 (Mo.App.1995) (citing Rule 75.01). When a party files an authorized post-trial motion, the period within which a trial court is empowered to amend its judgment is extended to ninety days. Rule 73.01; Rule 81.05. *See also Carter*, 901 S.W.2d at 911. Following the expiration of the initial thirty-day period, however, the trial court is limited to acting upon the range of remedies suggested in the parties' post-trial motions. *Carter*, 901 S.W.2d at 911;

*Layton v. Layton*, 724 S.W.2d 657, 658 (Mo.App.1986).

The original dissolution decree in this case was entered April 30, 2010. Wife's motion to amend was timely filed May 4, 2010, thereby extending the period within which the trial court could amend its judgment to ninety days, with an end date of July 29, 2010. The trial court's amended decree of dissolution was entered July 19, 2010. The trial court thus had the authority to amend its original judgment, but was limited to those remedies requested by Wife in her post-trial motion.

While there is no express request for relief with regard to the summer visitation schedule contained in Wife's post-trial motion, her cognizance of the impossibility of the summer visitation schedule in the original judgment implies a request that the trial court alter the judgment's custody arrangement to provide for an enforceable summer visitation schedule. Both parties and the trial court agreed that the original judgment's summer visitation schedule was impossible to comply with, and therefore a modification of that schedule was necessary to render the judgment enforceable. Although Wife now takes exception to the trial court's resolution of this scheduling problem, her failure to provide the trial court with any specific solution precludes her from now contesting that reached by the trial court. The trial court's action was within the range of remedies requested in Wife's motion to amend, which simply asked that the trial court enter an enforceable order. *See Carter*, 901 S.W.2d at 911. Moreover, Wife's agreement at the hearing to an every-other-week schedule was in essence an agreement to the schedule ultimately prescribed by the trial court, albeit with less driving involved. Wife's second point has no merit and is denied.

### *Wife's Third Point Relied On is Multifarious*

■ In her third and final point, Wife contends:

The trial court erred and abused its discretion: by imputing income to Wife of $4,673.00, when the evidence at trial showed that she earned $3,484.00 per month in gross wages; by failing to increase Husband's Social Security Disability income by a percentage to compensate for the fact that those benefits were non-taxable; and by failing to impute additional income to Husband due to the $465,381.66 financial benefit that the trial court awarded Husband, because the law requires the court to consider all relevant factors, including the financial resources of a party pursuant to Rule 88.01 and § 452.340; and the trial court erred by modifying Husband's child support obligation to a lower amount in the *amended judgment* and ordering Wife to reimburse Husband for back child support that Husband was ordered to pay in the original *judgment,* without Husband filing a post trial motion to request a modification and without a change in obligation.

(Upper– and lower–case substituted for all capitals in original). Wife's point relied on does not comply with the requirements of Rule 84.04 and is therefore dismissed.

■ Wife's third point relied on contains no less than five separate allegations of trial court error: wrongfully imputing income to Wife; failing to consider the nontaxable nature of Husband's Social Security disability in calculating Husband's income; failing to impute income to Husband; modifying Husband's child support in the amended judgment; and ordering Wife to reimburse Husband for overpayment of back child support. "A statement of a point relied on ... violates Rule 84.04 when it groups together contentions not related to a single issue." *Biever v. Williams,* 755 S.W.2d 291, 293 (Mo.App. 1988). As such, it is multifarious.

■ Moreover, while identifying five different trial court rulings she is challenging, Wife has failed to state the legal reasons for each such claimed erroneous ruling and has failed to explain in a summary fashion, in the context of the case, how those omitted legal reasons support each claimed error as required by Rule 84.04(d). Our supply of those legal reasons or our marshalling of the facts in the case to support those reasons would improperly thrust us into acting as an advocate for Wife, which is something we cannot and will not do. "Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that the appellate court does not become an advocate for the appellant by speculating on facts and on arguments that have not been made." *BBCB, LLC v. City of Independence,* 201 S.W.3d 520, 530 (Mo.App.2006).

"Improper points relied on, including those that are multifarious, preserve nothing for appellate review." *Burns v. Elk River Ambulance, Inc.,* 55 S.W.3d 466, 477 (Mo.App.2001). Consequently, Wife's third point is dismissed.[8]

---

8. An exhaustive *ex gratia* review of the record satisfies this Court that there was no trial court error regarding any of the five actions challenged by Wife.

We also note that Wife's allegations regarding a modification in child support and reimbursement for back child support are factually inaccurate. In its amended judgment, the trial court recalculated Husband's child support payments based on his receipt of the FELA settlement proceeds; any child support payments due before his receipt of the funds were recalculated without taking into consideration the potential interest earned on those proceeds. Any child support payments due following Husband's receipt of the FELA set-

### Decision

The trial court's judgment is affirmed.

BARNEY, P.J., and BURRELL, J., concur.

tlement proceeds remain at the level calculated in the original judgment. This was done as a consequence of Wife's motion for stay of execution and was done with Wife's consent.