Karen King Mitchell, Chief Judge
Khristie Reed Paulson, Rebecca Brandel, Diane Canutt, Rod Canutt, Crystal Lewis, Rene Lucht, Diane Ortman, Debra Porwoll, Kris Vosburgh, and Stephanie Brown (collectively "Objectors") appeal the entry of a judgment approving a class action settlement between Plaintiffs/Class Representatives Michael Taylor, Dawn Fortner, and Catherine Gemkow (collectively "Plaintiffs")[1] and Defendants Dynamic Pet Products, LLC, and Frick's Meat Products, Inc. Objectors raise three arguments on appeal: (1) the court erred in approving the settlement on numerous grounds; (2) the court erred in failing to strike and then relying on a statement from the mediator; and (3) the court erred in denying Objectors' motion to intervene. Finding no error, we affirm.
Background[2]
On May 1, 2015, Objectors filed a nationwide class action lawsuit in the United *587 States District Court for the Southern District of California against Defendants, alleging false and deceptive advertising with respect to Defendants' product, "The Real Ham Bone for Dogs," in violation of state consumer protection laws. On October 5, 2015, Objectors also filed a state court action for injunctive relief on the same grounds in San Diego Superior Court.[3]
On May 16, 2016, Plaintiffs filed a class action petition in Missouri state court, alleging several violations of the Missouri Merchandising Practices Act (MMPA) by Defendants insofar as the Defendants' product, "The Real Ham Bone for Dogs," falsely advertised that it was safe for dogs but, in fact, was inherently dangerous to dogs, resulting in injury or death.[4] Defendants filed their answer in the case below on December 1, 2016, denying the allegations and raising thirty-six affirmative defenses. On both February 16, 2017, and March 16, 2017, Plaintiffs and Defendants participated in court-ordered mediation sessions for which John R. Phillips from Husch Blackwell, LLP, served as the mediator. On January 16, 2017, Plaintiffs' counsel invited Objectors' counsel to participate in the mediation sessions in hopes of reaching a global settlement of both the Reed and Taylor cases. Objectors' counsel attended and fully participated in both mediation sessions, wherein both Objectors' and Plaintiffs' counsel jointly proposed a claims-made settlement structure and a reversion of unclaimed funds to Defendants.[5]
As a result of the mediation sessions, the parties in the underlying suit were able to reach an agreement, and on April 4, 2017, Plaintiffs filed an amended petition identifying a nationwide class and a request for preliminary approval of a class action settlement.[6] Attached to the request was a term sheet for the proposed settlement agreement, a draft claim form, and draft settlement notices.[7]
On April 12, 2017, the court set a hearing date of April 19, 2017, for preliminary approval of the settlement agreement. The next day, Plaintiffs' counsel emailed Objectors' counsel to notify Objectors' counsel of the upcoming hearing. Objectors' counsel did not respond and did not attend the hearing for preliminary approval.
At the preliminary approval hearing, Plaintiffs' counsel advised the court that "Reed counsel had a full and fair opportunity *588 to participate and have a voice in the mediation, both before, during, and after." Plaintiffs' counsel further advised, "I gave the Reed counsel notice of this hearing, Your Honor, so that he would be aware-they would be aware of that and participate if they wished."
Following the hearing, the court issued a preliminary order approving the settlement and setting dates for notice, opt-outs, and objections. On May 5, 2017, Objectors filed a motion to intervene, which was denied by the trial court on June 6, 2017.[8] In denying the motion to intervene, the court found "that [Objectors] are able to protect their interest in the underlying case without intervention," and "that intervention would create the possibility of undue delay and prejudice to the original parties to the above captioned case." On July 11, 2017, Objectors filed their objections to the settlement agreement and notice of intent to appear at the final settlement approval hearing.[9]
Because Objectors' opposition to the settlement was based, in part, on the allegation that the settlement was the product of collusion, Plaintiffs filed Suggestions in Response to Objections to Settlement, which included, as an attachment, a declaration of Mediator Phillips indicating that the settlement was reached as a result of an arms-length negotiation. While acknowledging that he could not divulge confidential information, Mediator Phillips declared:
I can verify ... that counsel made vigorous and thoughtful presentations and arguments regarding their clients' positions on key issues. The parties were represented by zealous, well-informed, experienced and able counsel from both the Missouri litigation and the California litigation. The settlement was reached through vigorous, arm's length negotiations during the mediation sessions I conducted as well as prior and subsequent telephone calls and conferences conducted under my mediator authority.
Objectors filed an "Objection to Plaintiffs' and Class Counsel's Application for an Award of Attorneys' Fees and Expenses and Incentive Awards to Class Representatives," in which they argued that "the declaration submitted by mediator John R. Phillips should be stricken,"
*589 implying that it violated Phillips's duty of impartiality. At the final hearing, however, Objectors did not re-assert their request to strike; accordingly, the court did not rule on the motion.
Following the final approval hearing, wherein the court received argument from Plaintiffs, Defendants, and Objectors, the court issued its "Final Order and Judgment," approving the settlement and dismissing the petition with prejudice.[10] Objectors appeal.
Analysis
Objectors raise three points on appeal. In their first point, they argue that the trial court erred in entering judgment and approving the settlement because the settlement constituted a "reverse auction," had due process defects, and was unfair, inadequate, and unreasonable to absent class members. In their second point, they argue that the trial court erred in both failing to strike and relying on the declaration of Mediator Phillips because the declaration constituted a violation of Phillips's duty to remain impartial. And, in their third point, Objectors argue that the trial court erred in denying their motion to intervene. For ease of analysis, we address these points in reverse order.
A. Intervention was unnecessary.
Because Objectors' third point addresses their standing to appeal, we will discuss it first. To begin, Objectors have failed to include either the actual motion to intervene or any of the responsive filings in the record on appeal. Accordingly, we cannot discern whether they sought intervention as a matter of right or by permission. This is important, as it affects our standard of review. "Intervention is permitted by Rule 52.12(a) as a matter of right or by Rule 52.12(b), which provides for intervention by permission of the court." Johnson v. State , 366 S.W.3d 11, 20 (Mo. banc 2012). "A trial court's decision regarding intervention as a matter of right will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." Id. But we "review[ ] permissive intervention for abuse of discretion." Id. Accordingly, we could simply dismiss this point for violation of Rule 81.12(a). But, under either standard of review, Objectors' claim is meritless.
According to Objectors' brief, their purpose in seeking intervention below was to preserve their ability to appeal any adverse judgment: "Missouri law is unclear as to whether absent class members have standing to appeal based on their objections, or whether intervention is required. To [en]sure their standing, [Objectors] both filed objections to final approval of the settlement and a motion to intervene...." (Internal citations omitted.) But because intervention was unnecessary to ensure Objectors' standing to appeal, the trial court committed no error in denying their request.
Generally, "only parties to a lawsuit, or those that properly become parties [e.g., through intervention], may appeal an adverse judgment." Marino v. Ortiz , 484 U.S. 301, 304, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988). Though non-named class members (such as Objectors) are not parties for many purposes, they "are parties to the proceedings in the sense of being bound by the settlement."[11]
*590 Devlin v. Scardelletti , 536 U.S. 1, 10, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002). "It is this feature of class action litigation that requires that class members be allowed to appeal the approval of a settlement when they have objected at the fairness hearing." Id. "To hold otherwise would deprive non[-]named class members of the power to preserve their own interests in a settlement that will ultimately bind them, despite their expressed objections before the trial court." Id. And, "[j]ust as class action procedure allows non[-]named class members to object to a settlement at the fairness hearing without first intervening,[12 ] it should similarly allow them to appeal the [trial c]ourt's decision to disregard their objections." Id. at 14, 122 S.Ct. 2005 (internal citation omitted). Accordingly, "non[-]named class members ... who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening." Id.
Because Objectors filed their objections to the settlement within the time frame prescribed by the trial court, they have standing to appeal even absent intervention. As such, the trial court committed no error in denying their request to intervene. Point III is denied.
B. Objectors abandoned their request to strike the mediator's declaration.
In their second point, Objectors argue that the trial court erred in both failing to strike and relying on the mediator's declaration, which was attached as an exhibit to Plaintiffs' response to the various objections raised. Despite their written request to strike Mediator Phillips's declaration, Objectors did not pursue this request at the final approval hearing and never sought a ruling on it. "A motion may be waived or abandoned by failing to proceed with respect to it, or by continuing before the determination of the motion in a manner which is not consistent with the object of the motion." Vermillion v. Burlington N. R.R. Co. , 813 S.W.2d 947, 949 (Mo. App. E.D. 1991). Accordingly, we hold that Objectors abandoned their request to strike Mediator Phillips's declaration.[13]
As for Objectors' argument that the trial court erred in relying on Mediator Phillips's declaration, we hold that Objectors have failed to meet their burden of demonstrating error insofar as the record does not reflect that the trial court relied on the declaration in reaching its conclusions. The *591 only reference to Mediator Phillips in the final judgment is to note that he supervised "two all-day mediation conferences" and that he is "a mediator with substantial experience in resolving complex class actions."
In any event, "[w]e will not reverse a judgment because of error which is not prejudicial to the appellant." Fairbanks v. Weitzman , 13 S.W.3d 313, 321 (Mo. App. E.D. 2000). Though the judgment reaches the same conclusion as the declaration insofar as it finds that "[t]he Settlement is the result of arm's length negotiations between adverse parties and was fairly negotiated," this conclusion is fully supported by affidavits and argument from both Plaintiffs' and Defendants' attorneys as well as the record of the litigation, itself. "Evidence that reiterates the same point is 'cumulative.' " In re Matter of J.D.B. , 541 S.W.3d 662, 675 (Mo. App. E.D. 2017) (quoting Martin v. Mercy Hosp. Springfield , 516 S.W.3d 403, 406 (Mo. App. S.D. 2017) ). Accordingly, Mediator Phillips's declaration was, at best, cumulative of other evidence presented. "A complaining party is not entitled to assert prejudice if the challenged evidence is cumulative to other related admitted evidence." Id. (quoting Martin , 516 S.W.3d at 406 ).
As such, Point II is denied.
C. Objectors' belated and commingled complaints violate Rule 84.04(d) and amount to sandbagging, which this court will not condone.
In their first point, Objectors challenge the settlement as a whole, arguing that it constitutes a "reverse auction" and fails to meet the requirements of due process in virtually every conceivable way. The argument following this point is comprised of eleven subsections, each attacking a separate aspect of the settlement agreement, including specified provisions that Objectors' counsel helped craft, various procedural requirements, sufficiency of notice, the entire claims procedure, and calculations of attorneys' fees. Both Plaintiffs and Defendants argue that we should deny this point outright because it is both multifarious and contains abstract claims of error. They further argue that, because Objectors were full participants in the settlement negotiations and had the opportunity to-but did not-raise any of these issues before they filed their formal objections, their actions amount to improper sandbagging and should not serve as a basis for reversal. Plaintiffs' and Defendants' complaints are well-taken.
Rule 84.04(d)(1) requires each point relied on to "(A) identify the trial court ruling or action that the appellant challenges; (B) state concisely the legal reasons for the appellant's claim of reversible error; and (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." "Abstract statements of law, standing alone, do not comply with this rule." Rule 84.04(d)(4). "The purpose of the briefing requirements regarding points relied on is to give 'notice to the party opponent of the precise matters, which must be contended with and answered' and 'to inform the court of the issues presented for resolution.' " Mace v. Daye , 17 S.W.3d 154, 156 (Mo. App. W.D. 2000) (quoting Thummel v. King , 570 S.W.2d 679, 686 (Mo. banc 1978) ). "If the appellate court must search the argument portion of the brief or the record on appeal to determine or clarify the nature of the asserted claims, the court may interpret the claims differently than the opponent or differently than was intended by the party asserting the claim." Id.
Furthermore, "[a] statement of a point relied on [is multifarious and] violates *592 Rule 84.04 when it groups together contentions not related to a single issue." McLean v. First Horizon Home Loan, Corp. , 369 S.W.3d 794, 800 n.4 (Mo. App. W.D. 2012) (quoting In re Marriage of Cochran , 340 S.W.3d 638, 647 (Mo. App. S.D. 2011) ). "Improper points relied on, including those that are multifarious[,] preserve nothing for appellate review." Id. (quoting Cochran , 340 S.W.3d at 647 ).
Here, Objectors' first point on appeal states, verbatim:
The trial court erred in entering a final order and judgment that granted final approval to the class action settlement, because Missouri law requires class action settlements be free of collusion, comport with due process, and be fair, reasonable and adequate to absent class members, in that the settlement at issue was a reverse auction, had a number of due process defects, and was unfair, inadequate, and unreasonable to absent class members.
This point fails to identify "why, in the context of the case, th[e] legal reasons [identified] support the claim of reversible error." Rule 84.04(d)(1)(C). There is nothing within the point, itself, identifying specific due process defects or what specific aspects of the settlement are purportedly unfair, inadequate, or unreasonable to absent class members. And there are no facts alleged to support the abstract claim that the settlement constituted a "reverse auction."[14]
"It is well settled that assignments of error, which do not undertake to point out wherein the error lies present nothing for review." Berghorn v. Reorganized Sch. Dist. No. 8, Franklin Cty. , 364 Mo. 121, 260 S.W.2d 573, 580 (Mo. 1953). Though the argument that follows Objectors' first point relied on further details the alleged improprieties, "[a]n appellate court has no duty to search the argument portion of [an appellant's] brief to ascertain the import of abstract statements presented in the points relie[d] on portion of [the appellate] brief." Valentine v. State , 532 S.W.2d 877, 880 (Mo. App. 1976) ; see also Berghorn , 260 S.W.2d at 580 ("In the printed argument[,] appellants complain of various portions of the judgment entered against them, but such presentation of complaints presents nothing for review."). Accordingly, it is well within our discretion to deny this point outright. Yet, even in the face of Objectors' substantial rule violations,[15] there is an even more compelling reason to deny this point-to grant it would be to condone sandbagging.
"Sandbagging is the practice in which counsel ... remains intentionally silent when a possible error occurs at trial, with the hope of preserving the issue for appeal if the trial court does not correct the error." State v. Houston , 467 S.W.3d 894, 900 (Mo. App. E.D. 2015). "[S]andbagging tactics will not usually preserve the issue for appeal, because the defendant must make objections promptly to alert the trial court to the possible error." Id. ; see also Puckett v. United States , 556 U.S. 129, 134-35, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) ("the contemporaneous-objection rule prevents a litigant from 'sandbagging'
*593 the court-remaining silent about his objection and belatedly raising the [alleged] error only if the case does not conclude in his favor.... Failure to abide by this contemporaneous-objection rule ordinarily precludes the raising on appeal of the unpreserved claim of trial error."). In short, "[a] party cannot stand idly by not making an objection and not bringing to the attention of the trial court [its alleged] errors; gamble on a favorable verdict; and then, when the result is adverse, complain." Lindsey Masonry Co. v. Jenkins & Assoc. , 897 S.W.2d 6, 10 (Mo. App. W.D. 1995).
Here, Objectors' counsel were involved in the settlement negotiations from the beginning; they were invited to and participated in both Missouri mediation sessions. They were well aware of the proposed terms of the agreement, including the anticipated forms and methods of notice as well as the proposed claims procedure, and they had every opportunity to voice their concerns both before and at the preliminary approval hearing. But they chose not to appear and not to lodge any objections until the objection deadline set by the court as part of its preliminary approval order. And, at that time, they challenged virtually every aspect of the settlement agreement. Parties "should not engage in sandbagging tactics, by participating in ... meetings and [mediation] sessions but then [later] claiming that the entire procedure was fatally flawed from the time [it commenced]." O'Connell v. Sch. Dist. of Springfield R-12 , 830 S.W.2d 410, 421 (Mo. banc 1992) (Blackmar, Sr. J., concurring).
Here, because Objectors participated in the mediation process and had the opportunity to raise their challenges either before or at the preliminary approval hearing, but instead chose to remain silent, their challenges are now waived. To the extent that Objectors challenge the attorneys' fee award, which arguably was not fully known at the time of the preliminary approval hearing,[16] those claims are not identified in the point relied on and are, therefore, waived. In short, when Objectors chose to sit idly by and not raise any objections to the proposed settlement agreement, notice provisions, or claims procedures, wherein they were involved in negotiations, had full knowledge of the proposed agreement, and had the opportunity to challenge any of the terms at the preliminary approval hearing but chose not to appear, they waived the challenges they now raise on appeal.
Point I is denied.
Conclusion
The trial court committed no error in approving the settlement agreement over Objectors' objections. Its judgment is affirmed.
Cynthia L. Martin, Judge, and Jeff Harris, Special Judge, concur.
Appendix
• Gross settlement: $2,400,000.00 divided as follows:
• For dog injury/property damage and product purchase claims a total of $1,350,000.00. These funds will be paid on a per claim basis as discussed below.
*594 1) Pet injury/property damage claims exceeding the common fund will be paid up to a limit of an additional $250,000 as discussed below;
2) Common fund of $150,000 cash for payment of the first $150,000 of dog injury/property damage and product purchase claims as discussed below;
3) If the product purchase claims exceed the Common Fund, they will be secured by a bond or letter of credit and paid up to a limit of an additional $950,000 as discussed below.
• Class Counsel Attorney Fee/Notice and settlement administration/Incentives: $1,050,000.00 , broken down as follows:
1) Reimbursement of Class Counsel's attorney fees and expenses in an amount not to exceed $700,000.00;
2) Notice and Settlement Administration Costs in an anticipated amount of $335,000; and
3) Class Representative Incentive Awards in an aggregate amount not to exceed $15,000.
• Terms:
• Missouri court certification of a nationwide settlement class consisting of "ALL PEOPLE IN THE UNITED STATES WHO PURCHASED A REAL HAM BONE FOR DOGS OTHER THAN FOR PURPOSES OF RESALE BETWEEN JANUARY 1, 2011 AND THE DATE NOTICE IS SENT TO THE CLASS OR WHO SUFFERED PET INJURY/PROPERTY DAMAGE FROM USE OF THE REAL HAM BONE FOR DOGS. "
• Excluded from the class are those who purchased for resale, Defendants, including their officers, directors and related entities, and the judicial officers assigned to Reed and Taylor. Persons who are excluded from the class are not eligible to make claims.
• Settlement binds all class members such that all causes of action under any state or federal consumer protection statute, negligent misrepresentation, common law fraud, or pet injury/property damage arising under the facts alleged in Reed v. Dynamic Pet or Taylor v. Dynamic Pet are extinguished unless a member of the class submits a timely opt-out form.
• If the number of opt outs exceeds 5% of the total class as measured by units sold, then either party may void the settlement.
• Defendants agree to [an] injunction preventing them from manufacturing or selling dog products sourced from pig bones until the earliest of (1) the product is reformulated so that it is more durable than an uncooked bone or; (2) Defendants obtain insurance coverage to compensate owners whose pets have been killed or injured due to consumption of the product.
• Notice and settlement administration:
• Dahl Administration will be the settlement administrator and will develop and administer the media plan for notice to settlement class members. Dahl Administration will provide notice sufficient to meet due process requirements in each jurisdiction of the United States.
*595 • Notice and media plan will include the following components: direct emailed or mailed (postcard) notice to known class members; publication notice including targeted internet advertising using behavior targeting and contextual targeting, targeted social media advertising on Facebook , internet search targeting, a press release and other components as recommended by Dahl Administration.
• Funds for attorney fees/notice/settlement administration/incentives will be deposited in a Qualified Settlement Fund (QSF) as provided herein and maintained by Dahl Administration. Funds for dog injury/property damage claims happening on or before March 31, 2016 will be paid by insurance. Product purchase claims and dog injury/property damage claims happening after March 31, 2016 will be bonded by a reputable bonding company or a bank letter of credit.
• Dahl will establish and maintain a dedicated and interactive settlement website (www.RealHamBoneSettlement.com), a post office box for mail correspondence, and a fully automated call center with a toll free number.
Timing:
• Draft a complete settlement agreement incorporating the terms of this term sheet and other usual terms in order to complete this settlement, to be circulated no later than April 18, 2017, unless additional time is needed.
• Plaintiffs will file an amended petition in Missouri state court to allege a nationwide class action under the MMPA. Defendants will stipulate to the filing of the amended petition and agree not to remove the action to federal court.
• Counsel for plaintiffs in the Taylor action shall seek appointment as lead class counsel. This appointment request shall be joined by Defendants. The parties will agree to the creation of a settlement class only, which will be void if final approval of the settlement is not achieved.
• The Parties will jointly move for preliminary approval of the settlement by the Missouri trial court (the Parties to submit the executed Settlement Agreement to the Court and apply for a Preliminary Approval Order (certifying a settlement class conditioned on final approval; preliminary approval of notice/media plan; preliminary approval of notice language; preliminary approval of response period)): within 14 days after execution of the settlement agreement.
• To facilitate mailed notice, Defendants shall provide the settlement administrator with known email and physical addresses of class members within 3 days after preliminary approval.
• Defendants will deposit funds into the QSF for attorney fees/notice/settlement administration/incentives within 10 days after preliminary approval.
• Notice via publication per media plan set out by administrator and/or by mailing (postcard and email notice) to begin 14 days after preliminary approval.
• Notice via publication (with language in compliance with Fed. R. Civ. P. 23 ), both print and online, to proceed per media plan. Notice via *596 publication will continue for 30 days.
• Claimants will have 15 days before the date first set for the final approval hearing to opt out or object to the settlement, and in no event less than 30 days from the completion of the notice program.
• Claimants will have 90 days from last publication and/or mailing to submit claims (forms provided at website link in notice or from computerized call center provided by administrator).
• Fairness hearing for final approval of settlement to occur no earlier than 15 days after the deadline for objections.
• Disbursement of funds for approved attorneys' fees and incentive awards to occur within 45 days after entry by the Court of order approving attorneys' fees, incentive awards and settlement and entry of judgment dismissing with prejudice and on the merits as to Defendants, provided that no appeals have been filed.
• Settlement administrator will have 30 days after deadline for last-submitted claims to review and adjust pet injury and product purchase claims and to notify the parties of the total amounts of the approved claims.
• Defendants will deposit funds into the QSF sufficient to pay approved dog/injury property damage claims and product purchase claims within 30 days after being notified of these amounts by the settlement administrator.
• Disbursement of funds for pet injury and product purchase claims to occur within 30 days after Defendants deposit funds into the QSF to pay these claims.
• Claim details:
• Recovery for Dog injury/property damage claims: payment of veterinary bills and expenses for pet deaths and injuries up to a total cap of $2,500 per claim and with an annual cap of $50,000 per year for dog injury/property damage occurring in a single year. Claimants must present evidence that indicates that the product was likely the cause of the injury or death. Evidence may be in the form of veterinary records evidencing purchase or use of Defendants' product and veterinary records that identify or associate pet injury or death with consumption of Defendants' product. No payment will be made for property damage claims previously paid by Defendants and/or for which Defendants have already received a release. The evidence may be in the form of veterinary notes, veterinary records, veterinary bills, and veterinary correspondence, and must include a declaration under penalty of perjury as part of an agreed upon claim submission form. Defendants' total liability for dog injury/property damage claims will be capped at an additional $250,000 beyond the common fund.
• Recovery for product purchase claims submitted with proof of purchase: Defendants will pay $3.00 for each bone with proof of purchase with a limit of 10 bones per household . "Proof of purchase"
*597 must be a store receipt or such other financial records that will identify the product, the price at which claimant purchased and contain evidence that the amount was paid by the claimant.
• Recovery for product purchase claims submitted without proof of purchase: Defendants will pay $3.00 per bone purchased without proof of purchase with a limit of 4 bones per household .
• Defendants' total liability for product purchase claims will be capped at an additional $950,000 beyond the common fund.
• Claimants from a single household are limited to submit claims either with proof of purchase or without proof of purchase, but cannot submit claims in both categories.
• For recovery, claimants must complete claim form agreed to by the parties and approved by the settlement administrator. Claims may be submitted by mail or online.
• Settlement administrator will in the first instance determine the validity of claims and amount to be paid and shall present any denied claims to the parties for review and consent. If consent concerning a denied claim is not reached, the parties shall seek to negotiate a resolution or bring the matter to the court for resolution. Settlement Administrator shall employ adequate and customary actions to identify likely fraudulent claims. Any likely fraudulent claims shall be denied.
• If the bonded funds are insufficient to pay approved claims, then the amount paid to claimants will be reduced pro rata.
• Funds remaining in the QSF after payment of all approved claims and expenses shall revert to Defendants.
• A bank account will be established by Dahl Administration that is funded immediately from bonded funds when a settlement check is cashed.
• General release for Defendants, insurers, agents, attorneys, etc. relating to the claim. Release will broadly release all claims arising out of or relating to the purchase or use of the Real Ham Bone for Dogs.
• Dismissal of all litigation, including injunction litigation, with prejudice.
• The Defendants will pay the mediation fees.
• In the event settlement is not approved by the Court for any reason or is not given full faith and credit or is subject to collateral attack, Defendants reserve the right (1) to negotiate further in an attempt to reach a nationwide settlement; or (2) to proceed with defense of the matter including opposition to any class certification.
• The parties stipulate and agree that this Term Sheet is a binding agreement enforceable in court. In this regard, the parties irrevocably agree to submit to the exclusive jurisdiction and venue of the Circuit Court of Jackson County, Missouri for any suit, action or proceeding to enforce the terms of the settlement memorialized in this Term Sheet.
• The parties and their counsel will make reasonable and expeditious efforts to obtain a stay of proceedings in the Taylor and the Reed cases providing that all proceedings in such cases shall be stayed pending approval of the settlement, other than those necessary *598 to administer, evaluate and approve the settlement.

At various places in the record, the underlying case is referred to as the Taylor case, after the lead plaintiff, Michael Taylor.

The facts are viewed in the light most favorable to the judgment. Bell v. W. Sur. Co. , 524 S.W.3d 109, 112 (Mo. App. W.D. 2017). Objectors' Statement of Facts is in violation of Rule 84.04(c), which requires "[t]he statement of facts [to] be a fair and concise statement of the facts relevant to the questions presented for determination without argument. " (Emphasis added.) The rule further requires "[a]ll statements of facts [to] have specific page references to the relevant portion of the record on appeal, i.e., legal file, transcript, or exhibits." Objectors' Statement of Facts violates both of these provisions insofar as it is argumentative and fails to include citations for each factual assertion therein.

These cases will be referred to collectively as the Reed cases, as both were captioned Reed v. Dynamic Pet Products, et al.

On July 26, 2016, Plaintiffs' counsel was invited to California to attend a mediation session in the Reed cases, but counsel was not allowed to participate in negotiations and no settlement was reached at that time.

At some point on March 16, 2017, a dispute arose between Reed counsel and Plaintiffs' counsel regarding fee splitting. Objectors' counsel had to catch a plane shortly before the March 16, 2017 mediation session concluded, and after Objectors' counsel left, Plaintiffs and Defendants were able to reach an agreement on most terms with others subject to a double-blind mediator's proposal that was to be left open for seven days. Plaintiffs' counsel notified Objectors' counsel the next day of the terms that had been reached and those that remained open. Objectors' counsel indicated that he did not agree with the terms, but he did not identify any specific defects at that time.

After the two mediation sessions in the case below but before the agreement was reached in the underlying case, Objectors filed a third class action in California federal court on March 31, 2017, captioned Brown v. Dynamic Pet Products, et al. That case will be referred to in this opinion as the Brown case.

A copy of the Term Sheet is reproduced in an appendix to this opinion.

There was a flurry of responsive motions surrounding the intervention request, but neither the motion itself nor any of the responsive motions or suggestions have been included in the record on appeal, despite the fact that the court's denial of the intervention request is the error alleged in Objectors' third point on appeal. Consequently, it is unclear upon what basis Objectors sought to intervene. Both Plaintiffs and Defendants pointed out the absence of these documents in their responsive briefs. Objectors then filed a supplemental legal file that still did not include any of these documents, and, in their reply brief, Objectors fault Plaintiffs and Defendants for not filing a supplemental legal file with these necessary documents, even though-as the appellants-it was Objectors' duty to submit a legal file "contain[ing] all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." Rule 81.12(a) (emphasis added). All rule citations are to the Missouri Supreme Court Rules (2017), unless otherwise noted.

Again, in violation of their duty as the appellants under Rule 81.12(b), Objectors have failed to include all necessary documents in the record on appeal. For example, the court's original order set a deadline of July 3, 2017, for any objections to the settlement. Objectors' objections, however, were not filed until July 11, 2017; thus, it appears-from the record provided -that the objections were untimely. This court's own research, however, discovered that there was an additional order issued extending the relevant deadlines. Under this order that is absent from the record on appeal, Objectors' objections were timely filed.

Neither party requested specific findings of fact or conclusions of law; accordingly, we assume all disputed facts and credibility determinations were resolved in accordance with the final judgment. Rule 73.01(c).

Would-be intervenors, such as Objectors, whose request for intervention is denied also become " 'part[ies]' to the final judgment because ... the interlocutory order overruling [their] motion to intervene [is] incorporated into th[e] final judgment." State ex rel. Koster v. ConocoPhillips Co. , 493 S.W.3d 397, 402 (Mo. banc 2016). This fact, however, gives would-be intervenors standing to appeal only the denial of their request for intervention; it would not give Objectors here standing to appeal the denial of their objections to the settlement. But, as discussed above, intervention was unnecessary for that purpose, as their timely objections, alone, gave them standing to appeal.

In support of this assertion, the Court relied on a former version of Federal Rule of Civil Procedure 23(e), which provided: "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." This version of the rule is identical to Missouri's Rule 52.08(e), which provides: "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

In any event, we see no merit in Objectors' contention that Mediator Phillips breached his duty of impartiality merely because his conclusion that "[t]he settlement was reached through vigorous, arm's length negotiations" conflicts with Objectors' position on appeal.

A "reverse auction" is a situation where "a defendant picks out a plaintiff with weaker claims and weaker counsel in an effort to negotiate a more favorable settlement." Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship , 874 F.3d 692, 695 (11th Cir. 2017).

In addition to the defective point relied on, Objectors' Statement of Facts was argumentative and failed to support every factual assertion with a record citation, as noted in footnote 2, supra , and Objectors failed to file a complete record on appeal in violation of their duty as appellants under Rule 81.12(a) and (b), as noted in footnotes 8 and 9, supra.

The term sheet attached to Plaintiffs' request for preliminary approval plainly identified that "[r]eimbursement of Class Counsel's attorney fees and expenses [would be] in an amount not to exceed $700,000.00." Plaintiffs' actual attorneys' fee request ($655,000.00) was lower than the $700,000.00 anticipated and made known to Objectors' counsel before the preliminary approval hearing.