

# In the Missouri Court of Appeals
## Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| LARRY WILLIAMS AND LELA DAVIS, | ) | No. ED101478 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Michael W. Noble |
| KAYATANA A. THOMPSON, | ) | |
| | ) | |
| Appellant. | ) | Filed: May 5, 2015 |

The defendant, Kayatana Thompson, appeals the judgment entered by the Circuit Court of the City of St. Louis against her and in favor of the plaintiffs, Larry Williams and Lela Davis. The plaintiffs sued the defendant for personal injuries and property damage, respectively, that they sustained when the defendant's vehicle struck the vehicle operated by Williams and owned by Davis.

In eight points on appeal, the defendant challenges the trial court's grant of the plaintiffs' motion for a directed verdict, the weight of the evidence to support Williams's claim of personal injury, the trial court's personal jurisdiction over her, the trial court's subject-matter jurisdiction over Davis's claim, and prejudicial statements the trial court allegedly made. Because we conclude that the trial court erred in granting the plaintiffs' motion for a directed verdict based on the rear-end collision doctrine, we reverse and remand to the trial court for a new trial.

*Factual Background*

On February 21, 2010, plaintiff Williams drove the car owned by his mother, plaintiff Davis, to the market. Williams was stopped at a red light on southbound North Florissant at its intersection with Madison in the City of St. Louis. Another car was stopped in front of him at the light. The light turned green, but the car ahead of Williams did not move forward. After waiting about 30 seconds for the car ahead of him to go, Williams honked his horn, and the car in front of him proceeded forward. Williams testified that before he could take his foot from the brake to drive forward, the defendant's vehicle collided with the rear of the vehicle he was driving. Williams testified that he suffered permanent aggravation of pre-existing neck and back injuries, and that he incurred approximately $18,000 in bills for medical treatment of his injuries. Williams introduced no medical records or bills into evidence. Williams called no doctor to testify. Williams further testified that his mother's car suffered damage that cost $845.09 to repair.

The defendant, who appeared *pro se* at trial, admitted that her vehicle collided with the rear of the plaintiffs' vehicle. She testified in the plaintiffs' case as follows.

> Q. Miss Thompson, you were driving an automobile on February 21st, 2010, on North Florissant?
> A. Yes, sir.
> Q. Did the front of your vehicle ever come into contact with the rear of Mr. Williams'[s] car?
> A. Yes, sir.

After the plaintiff rested, the trial court gave the defendant the opportunity to testify.

> THE COURT: You are reminded that you are under oath. Please have a seat.
> Miss Thompson, can you explain your version of events of February 21, 2010?
> MS. THOMPSON: On February 21st, 2010, around about 1:30 p.m., going southbound on North Florissant and Madison in St. Louis, Missouri, I was going to work. At the time there was rain. The pavement was wet.
> As I approached the street of Madison at the red light, there was a vehicle right in front of me, which was Mr. Larry Williams.
> As I approached him and as the pavement was wet, I tried to stop, which I cannot stop. I blew my horn. When I blew my horn, he did not move.

2

> I tried to avoid from hitting him, so when I kind of just, I don't want to say the word like swerved from to hit him full, but swerve just to hit—to not swerve—I hit him in the back of the trunk and collided with Mr. Williams.
>
> At the time I got out and asked Mr. Williams, and I asked him if I could make a payment 'cause I did not have insurance. He stated to me that he could not, because it was his mother's car.
>
> The police arrived. The police asked for my driver's license asked for his driver license and asked us if we—asked me was I hurt and asked Mr. Williams was he hurt. We both said no, we did not need ambulance to take us to the hospital or no assistance.
>
> Then I pulled over to the gas station to the right and which the police took all my information and proceeded with the questions for, of the accident.
>
> To my knowledge I feel I did not injur[e] Mr. Larry Williams. I just don't. I don't, I don't think that—I'm not going to say I don't think, I know I did not make these personal injuries for Mr. Larry Williams.

At this point, the plaintiffs' counsel objected, and the trial court sustained the objection. The defendant had nothing further to add to her testimony, the plaintiffs chose not to cross-examine her, and the defendant rested.

Only plaintiff Williams and the defendant testified at trial. The parties introduced no evidence of the speed limit on North Florissant, the defendant's rate of speed, the distance or time before impact once the defendant saw the plaintiffs' vehicle, whether the police identified skid marks on the road, or the length of any skid marks.

The plaintiffs renewed their motion for directed verdict at the close of all the evidence, both as to the claim for Williams's injury and the claim for Davis's property damage. The trial court granted the plaintiffs' motion. The trial court stated:

> [I]f they have hit all three of the elements that they need to prove, and the issue in this case is negligence, the issue is not whether the injuries occurred, it's this car striking the other car, it's a very low hurdle, they've met their burden, so I'm going to have to grant the [m]otion for directed verdict.

The trial court awarded $36,500 in damages to plaintiff Williams for his personal injuries, and awarded $845.09 to plaintiff Davis for her property damage. The defendant timely filed a motion for new trial. She then filed an addendum to her motion in an effort to add further

3

grounds for a new trial after the 30-day time limit for filing post-trial motions had expired. Rule 78.04. The trial court denied the defendant's motion for a new trial, and she appeals *pro se*.

*Discussion*

The defendant's first two points challenge the trial court's grant of the plaintiffs' motion for a directed verdict. We address these points together because both present the fundamental question whether the trial court properly granted the plaintiffs' motion for a directed verdict.

A directed verdict is a drastic action, and the court should grant it only when reasonable persons could not differ on the correct disposition of the case. *Garcia v. Leftwich-Kitchen*, 412 S.W.3d 348, 350 (Mo. App. W.D. 2013); *Broeker v. Haid*, 786 S.W.2d 615, 616 (Mo. App. E.D. 1990). When reviewing a plaintiff's motion for directed verdict, we must view the evidence in the light most favorable to the defendant, giving the defendant the benefit of all favorable inferences reasonably drawn from the evidence, and disregarding the plaintiff's evidence that does not support the defendant's case. *Clark v. Belfonte Distributing, Inc.*, 163 S.W.3d 581, 584 (Mo. App. W.D. 2005). A negligence action that depends upon oral testimony rarely presents a case in which the court is justified in directing a verdict in favor of the party having the burden of proof. *Garcia*, 412 S.W.3d at 350; *Duvall v. Smith*, 950 S.W.2d 526, 527 (Mo. App. E.D. 1997). Justification exists, however, when the defendant in her pleadings or by her counsel in open court admits, or by her own evidence establishes, the plaintiff's claim, or where there exists no real dispute of the basic facts supported by uncontradicted testimony essential to the claim. *Garcia*, 412 S.W.3d at 350-51; *Duvall*, 950 S.W.2d at 527; *Broeker*, 786 S.W.2d at 616.

The rear-end collision doctrine recognizes that if one has his vehicle in a portion of the highway where he should have it in view of his course, and another person traveling behind him in the same direction overtakes him and permits her vehicle to run into the rear of the one ahead,

4

proof of the collision under these circumstances makes out a *prima facie* case of specific negligence against the driver operating the overtaking vehicle. *Garcia*, 412 S.W.3d at 351; *Duvall*, 950 S.W.2d at 527. The doctrine applies where the lead vehicle is stopped at a stop light or stop sign. *Id.* The rationale behind the doctrine is that the party in the rear vehicle has a view of what is in front of her and can better explain why her vehicle struck the rear of the car ahead. *Clark*, 163 S.W.3d at 583-84. The doctrine is similar to *res ipsa loquitur* because the fact that the collision occurred "bespeaks" the defendant's negligence. *Id.* at 584. Time and distance available for the overtaking driver are factors necessary in determining whether the overtaking driver "permitted" the collision to occur. *Id.* The doctrine establishes a *prima facie* case, but does not compel a directed verdict. *Garcia*, 412 S.W.3d at 351. Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to produce rebuttal evidence. *Id.*

Viewed in the light most favorable to the defendant, the evidence was sufficient to create an issue of fact as to whether she exercised the applicable standard of care. The defendant adduced evidence to rebut the plaintiffs' *prima facie* case of negligence under the rear-end collision doctrine, namely the road conditions and her attempts to avoid the collision. The facts she adduced rendered a directed verdict for the plaintiffs under this theory inappropriate. The defendant testified that the road was wet, that she saw the plaintiffs' vehicle, that she tried to stop but could not, that she honked her horn but the plaintiffs' vehicle did not move, and that she took evasive action to try to avoid hitting the plaintiffs' vehicle "full."

Because the defendant's evidence neither "bespeaks negligence" nor supports an inference that she "permitted" her vehicle to collide with the plaintiffs' vehicle, the trial court erroneously granted the plaintiffs' motion for a directed verdict. *See Garcia*, 412 S.W.3d at 351-52 (defendant's evidence that her view was obstructed before cresting hill, that she complied

5

with speed limit, that lead vehicle stopped on road although not at intersection, that her vehicle left 149-foot skid marks, and that she had no safe place to swerve to avoid collision sufficient to create issue of fact as to whether defendant exercised applicable standard of care); *Clark*, 163 S.W.3d at 584-85 (facts neither bespoke negligence nor supported inference that defendant permitted collision to occur where he encountered no icy roads before reaching the accident location; he attempted to stop 100 yards before intersection by applying normal pressure to brakes but truck did not respond; and he tried to avoid collision by pumping brakes, honking horn, and swerving). We reverse the judgment and remand to the trial court for a new trial.[1]

In her third and fourth points, the defendant challenges the weight of the evidence to support the directed verdict for the plaintiffs. In her fifth point, the defendant challenges the weight of the evidence for the damage award to plaintiff Williams. Given our determination that the trial court erred in granting the plaintiffs' motion for directed verdict, we decline to address these points. We deny the defendant's third, fourth, and fifth points.

In her sixth point, the defendant claims the trial court lacked personal jurisdiction over her because she was not properly served pursuant to Rule 54.13(b)(1). The defendant did not include this issue in her original motion for new trial, so it is not preserved for our review. Rule 78.07(a). Furthermore, the record reveals that the defendant was served with a summons and the original petition on December 27, 2012. The defendant now complains that she was not personally served with another summons along with the amended petition that added Davis as a party and increased the amount of Williams's damages claim. The defendant misconstrues Rule 54.13(b)(1), which governs personal service on an individual within the State of Missouri. The

---

[1] The defendant is entitled to a new trial as to both liability and damages. Even if we were not compelled to reverse the trial court for directing a verdict as to the defendant's liability, we would have to reverse its assessment of damages. The rear-end collision doctrine may establish a defendant's liability, but it does not establish the assessment of damages, which are for the trier of fact.

6

rule does not require issuance and personal service of a new summons upon a defendant, who was previously served, each time that a petition is amended.

Even were we to assume, *arguendo*, that service was somehow defective, the defendant submitted herself to the jurisdiction of the trial court by undertaking numerous actions in the case, including answering the amended petition, filing motions to compel, setting hearings, filing a motion for summary judgment, and defending herself at trial. With the exception of an objection to subject-matter jurisdiction, if a party takes any action in a case that recognizes the case as being in court, this amounts to a general appearance. *KNT Mgmt., LLC v. Flenoid*, 419 S.W.3d 897, 900 (Mo. App. E.D. 2014). "In short, the test of a general appearance conferring jurisdiction over the person is whether the defendant becomes an actor in the cause." *Id.* The defendant's sixth point is meritless, and we deny it.

In her seventh point, the defendant claims the trial court lacked subject-matter jurisdiction to adjudicate plaintiff Davis's claim because Davis was not a party to the underlying cause of action. The amended petition added plaintiff Davis, who claimed property damage to her vehicle. "Subject-matter jurisdiction" means the court's authority to render a judgment in a particular category of case. *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009). "[T]he subject matter jurisdiction of Missouri's courts is governed directly by the state's constitution. Article V, section 14 sets forth the subject matter jurisdiction of Missouri's circuit courts in plenary terms, providing that '[t]he circuit courts shall have original jurisdiction over *all* cases and matters, civil and criminal.'" *Id.* (alteration in original). The defendant's seventh point is meritless, and we deny it.

In her eighth and final point, the defendant claims "the trial court was prejudice[d] against [the defendant] when it offered its opinion to state that [she] was winning at trial; and

7

sequentially [sic], discharged the jury before it rendered a verdict, and entered a judgment for a directed verdict in favor of Williams and Davis and against [the defendant]." The plaintiffs point out that no such statement appears in the record, despite the defendant's citation to the transcript. The defendant then claims in her reply brief that the trial court's statement occurred off the record. The trial court made no such statement on the record, nor does the transcript reveal any off-the-record proceedings around the time that the defendant contends the court made its statement. The defendant's final point is meritless, and we deny it.

The trial court erred in granting the plaintiffs' motion for a directed verdict based on the rear-end collision doctrine. Thus, we reverse and remand to the trial court for a new trial.[2]

_____
LAWRENCE E. MOONEY, PRESIDING JUDGE

CLIFFORD H. AHRENS, J., and
LISA VAN AMBURG, J., concur.

---

[2] We deny all pending motions.