

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| EVITA TOLU, | ) | No. ED112115 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | Cause No. 16SL-DR04088-02 |
| | ) | |
| ROBERT J. STIENTJES, | ) | Honorable Patrick S. Flynn |
| | ) | |
| Respondent. | ) | FILED: October 15, 2024 |

### Opinion

Evita Tolu (Mother) appeals from the trial court's judgment modifying child support. Mother raises thirteen points on appeal. In Points One and Two, Mother argues that Robert J. Stientjes (Father) improperly served her by publication, and subsequent personal service failed to cure the initial service deficiency, such that the trial court never acquired personal jurisdiction over her. In Point One, specifically, Mother alleges the trial court erred in finding she waived her jurisdictional challenge by filing a disqualification motion, which the trial court deemed a general appearance in the case. Mother contends the trial court consequently erred in assessing retroactive child support to the date of alleged waiver. Addressing these interrelated issues together, because Mother entered a limited appearance to move to dismiss for lack of personal jurisdiction and received an adverse ruling **prior** to filing her disqualification motion, we find the trial court erred in finding that the disqualification motion waived Mother's personal-jurisdiction

claim. Point One is granted in part. However, as to Point Two, because Mother stipulated to the date of personal service, which complied with the prompt-service requirement pursuant to Rule 54.21,[1] the trial court did not lack personal jurisdiction. Point Two is denied. Therefore, child support arrears may be assessed retroactive to the date of personal service pursuant to § 452.370.6.[2]

In Points Six and Seven, regarding the overall award of child support, Mother argues that the trial court erred in failing to find that child support abated under § 452.340.5 because Father and the children failed to send timely documentation of college enrollment. Because § 452.340.5's language concerning abatement is permissive rather than mandatory and gives the trial court discretion to decide the appropriate outcome based on the circumstances, we find the trial court did not misapply the law in awarding retroactive and future child support. We deny Points Six and Seven.

In Point Four, Mother alleges the trial court misapplied Rule 73.01(c) by failing to issue findings of fact and conclusions of law on all requested issues listed in her pre-trial request for findings, including findings on service of process, personal jurisdiction, the parties and children's current financial resources, and alleged discovery violations. Mother's filing failed to put the trial court on notice as to the specific contested issues, because it was more accurately a statement of proposed findings of fact and conclusions of law. Furthermore, as the trial court's judgment sufficiently set forth detailed findings of facts and conclusions of law on all the contested issues, we deny Point Four.

In Points Three, Five, Nine, and Twelve, Mother alleges trial court error on issues that were either stipulated to or wholly abandoned at trial, thereby waiving appellate review. The

---

[1] All Rule references are to Mo. R. Civ. P. (2023), unless otherwise noted.
[2] All Section references are to RSMo (2016), unless otherwise noted.

points also involve misstatements of the record that fail to identify grounds for reversible error. For those reasons, Points Three, Five, Nine, and Twelve are denied.

Turning to the remaining Points Eight, Ten, Eleven, and Thirteen, Mother challenges the trial court's parental income calculations. Specifically, in Points Eight, Ten, and Eleven, Mother argues the trial court erred in calculating her income by using impermissible evidence. In Point Eight, Mother claims the trial court erred in using a stale loan application to determine her income. Next, in Point Ten, Mother alleges the trial court erred in using wage surveys not introduced at trial to impute income to her. Then, in Point Elven, Mother alleges the trial court erred in allowing Father's attorney to argue for "reverse engineering" of Mother's income through her expenses. Finally, in Point Thirteen, Mother complains of trial court error in determining Father's income by failing to account for Father's business rent deductions and self-employment or health savings funds contributions.

In Point Eight, Mother did not demonstrate the old loan application was used other than for impeachment purposes or that it prejudiced her income determination. We deny Point Eight. In Point Ten, because the trial court was authorized pursuant to Missouri Supreme Court Form 14[3] Comment H to take judicial notice of certain wage surveys for the imputation of parental income, we deny Point Ten. In Point Eleven, Mother failed to preserve her challenge to the "reverse engineering" argument at trial by failing to object and further did not demonstrate that the trial court gave said argument any weight. We deny Point Eleven. Lastly, as to Point Thirteen, Mother failed to show how Father's business rent deductions or contributions to his self-employment fund or health savings account constituted income, and she further failed to preserve such claims at trial. We deny Point Thirteen.

---

[3] All Form references are to Mo. R. Civ. P. Form 14 (2022).

Accordingly, we affirm the trial court's judgment in part and reverse in part. We remand for the trial court to modify its award of retroactive child support to the date of personal service. The judgment is affirmed in all other respects.

Background

Mother and Father dissolved their marriage in 2016 through a dissolution judgment that awarded joint legal and physical custody of then-minor sons T.S. and A.S.[4] and awarded child support, including anticipated college expenses. The dissolution judgment was modified in 2019 to grant Mother sole legal and physical custody over T.S. and Father sole legal and physical custody over A.S., while terminating all support provisions and assigning each parent full financial responsibility for their respective custodial child, including their respective 529 college savings accounts.[5]

In July of 2020, Father moved in the subject proceeding to modify the judgment by seeking custody over T.S. and T.S's financial accounts as well as child support from Mother. Initially, Father served Mother through publication. Mother, an attorney acting pro se, entered a limited appearance to contest service and personal jurisdiction and filed a motion to dismiss on the same grounds. The trial court denied Mother's motion to dismiss. Later, Mother moved to disqualify all judges of the 21st judicial circuit. Throughout the pre-trial litigation, Mother continued to dispute the trial court's exercise of personal jurisdiction. Next, Mother filed a Rule 74.06(b) motion for relief from the circuit court's order that she alleged to be void for lack of jurisdiction due to fraud as well as a renewed motion to dismiss for failure to obtain jurisdiction through service. The trial court denied both motions. Mother labeled her discovery requests to

---

[4] Names of minors are redacted pursuant to § 509.520, RSMo (Cum. Supp. 2023).
[5] A 529 account is a common type of educational account that is set up to pay costs of college pursuant to a state plan established under the authority of 26 U.S.C.A. § 529.

Father as "related to lack of personal jurisdiction." Mother renewed her challenge to personal jurisdiction at trial and in her motion for new trial.

The modification proceeding came to trial in October 2022. On the record, Mother stipulated to various facts and legal positions, including that the only triable issues were child support and attorneys' fees. Mother, Father, and both children, T.S. and A.S., testified at trial. T.S., then eighteen years old, testified that he graduated high school and was enrolled in his first semester of college. A.S., then nineteen years old, testified that he was a sophomore in college on a Reserve Officers' Training Corps (ROTC) scholarship. Both T.S. and A.S. testified that Mother knew they were enrolled in college, although there were discrepancies as to whether they timely provided records of enrollment and other official college documents to Mother.

In its final judgment of modification, the trial court ruled that Mother waived any challenge to personal jurisdiction through her filings on her motion to disqualify, which the court found went beyond contesting personal jurisdiction. The trial court proceeded to find that the prior judgment required modification due to a showing of a substantial and continuing change in circumstances. By stipulation of the parties, the trial court awarded Father sole legal and physical custody of T.S. and A.S. The trial court explicitly found Mother's testimony not credible, particularly when it came to responding to conflicting evidence. The trial court made findings of fact related to the incomes of both parents, including imputing income to Mother, and attached a Form 14 child-support calculation form and a Part B child-support plan to the judgment.

The trial court awarded Father child support in the amount of $1,049 per month. The trial court also awarded Father $25,176 in retroactive child support arrears dating back to April 21, 2021, the date on which the trial court held Mother generally entered the matter through her

5

disqualification motion. The trial court awarded Father control of both children's 529 college savings accounts, to be used for the payment of educational expenses and specified that additional parental contribution could be requested only if the plans were exhausted prior to emancipation. Mother filed a post-judgment motion for new trial, which was denied. Mother then filed this appeal. Father moved to strike Mother's appellate brief for failure to comply with the rules of appellate procedure in Rule 84.04, and we took the motion with the case.

Additional facts from the record will be set forth in the discussion.

Standard of Review

We review judgments modifying child support the same as other court-tried cases under the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Morgan v. Morgan*, 497 S.W.3d 359, 363 (Mo. App. E.D. 2016). "We will affirm the trial court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Sansone v. Fulton*, 679 S.W.3d 9, 13 (Mo. App. W.D. 2023) (internal quotation omitted). "Whether to modify child support is a decision that lies within the discretion of the trial court, whose decision will be reversed only for abuse of discretion or misapplication of the law." *Id.* (internal quotation omitted). "The trial court is in a superior position to weigh all the evidence and render a judgment based upon that evidence; as such, the judgment is to be affirmed under any reasonable theory supported by the evidence." *Morgan*, 497 S.W.3d at 363 (internal citation omitted).

When assessing the trial court's income determinations and child support calculations, § 452.340 and Rule 88.01 together "establish the method and guidelines for calculating child support." *Girgis v. Girgis*, 676 S.W.3d 510, 513 (Mo. App. E.D. 2023) (internal citation omitted). In a two-step procedure, the trial court first calculates the presumed amount of child support using Form 14, which establishes "a rebuttable presumption that the presumed child

6

support amount is the correct amount of child support." *Id.* (internal quotation omitted). The trial court next assesses under Form 14's guidelines whether the presumed child support amount is unjust or inappropriate. *Id.* (internal citation omitted). "If the amount is unjust or inappropriate, the [trial] court may adjust the support based on the circumstances of the parties." *Id.* (internal citation omitted). In light of this broad discretion, a trial court "may accept the proposed Form 14 calculations from the parties or reject both parties' proposed Form 14s and prepare its own." *Id.* (quoting *Schaberg v. Schaberg*, 637 S.W.3d 512, 525 (Mo. App. E.D. 2021)). As with the overall standard of review, "[a]ppellate courts review the [trial] court's application of this two-part procedure to determine if it is supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Id.* (internal citation omitted). "If the [trial] court's application of the procedure is sound, appellate courts 'will interfere with the [trial] court's award only if the [trial] court abused its discretion by ordering an amount that is against the logic of the circumstances or arbitrary or unreasonable.'" *Id.* (internal quotation omitted).

Discussion

## I.      Father's Motion to Strike

As a threshold issue, we deny Father's motion to strike Mother's appellate brief pursuant to Rule 84.04. Despite various minor deficiencies, some of which will be noted later in the discussion, Mother's briefing is not so deficient as to prevent meaningful review, and we choose to exercise our discretion to review the appeal on the merits, as is our preference. *See Matter of Marvin*, 682 S.W.3d 788, 797 (Mo. App. W.D. 2023); *Sansone*, 679 S.W.3d at 14.

7

## II.    Points One, Two, Six, and Seven—Personal Jurisdiction and Child Support

### A.    Points One and Two—Personal Jurisdiction

In Points One and Two, Mother argues the trial court erred by not dismissing the modification proceeding due to lack of personal jurisdiction.  Specifically, Mother argues in Point One that her motion to disqualify all judges of the 21st judicial circuit did not waive her challenge to personal jurisdiction because she had already preserved her objection in a motion to dismiss, which the trial court had overruled.  Relatedly, Mother contends in Point Two that no subsequent service cured Father's improper service by publication because the requisite personal service for a motion to modify child support was not made until after Rule 54.21's thirty-day deadline or permissible ninety-day extension.

As will be explained in the following analysis, because Mother entered a limited appearance to move to dismiss for lack of personal jurisdiction and received an adverse ruling **before** filing her disqualification motion, the trial court erred in finding that the disqualification motion waived Mother's personal-jurisdiction claim.  However, because Mother was personally served on February 14, 2022, within thirty days of the trial court's summons issued on January 31, 2022, personal service was compliant with Rule 54.21's prompt-service requirement and thus did not deprive the trial court of personal jurisdiction.

#### 1.    Point One—Mother's motion to disqualify did not waive her challenge to personal jurisdiction

A claim that a trial court lacks personal jurisdiction is waivable.  *Int. of A.R.B.*, 586 S.W.3d 846, 859 (Mo. App. W. D. 2019) (citing Rule 55.27(g)(1)).  To avoid waiver, "[a] defendant must raise any challenges to the trial court's personal jurisdiction, the sufficiency of process, and the sufficiency of service of process in either a pre-answer motion or as a defense in the answer." *Ball v. Ball*, 638 S.W.3d 41, 47–48 (Mo. App. W.D. 2021) (quoting *Int. of A.R.B.*,

8

586 S.W.3d at 859). A timely motion to dismiss for lack of personal jurisdiction adequately preserves the defense. *See* Rule 55.27(g)(1). Further, a party does not waive a personal-jurisdiction claim by entering a limited appearance to file a motion to dismiss for lack of personal jurisdiction. *See* Rule 55.03(b)(1)–(3) (providing that "[a]n attorney appears in a case by: (1) [p]articipating in any proceeding as counsel for any party unless limited by an entry of limited appearance" and (3) "[a] written entry of appearance may be limited by its terms to a particular proceeding or matter").[6]

As the trial court correctly noted in this proceeding, while a party does not waive personal jurisdiction by entering a ***limited*** appearance to contest jurisdiction, a party may waive personal jurisdiction by entering a ***general*** appearance through litigating matters outside the jurisdictional issue. *See Williams v. Thompson*, 489 S.W.3d 823, 829 (Mo. App. E.D. 2015) (citing *KNT Mgmt., LLC v. Flenoid,* 419 S.W.3d 897, 900 (Mo. App. E.D. 2014) ("With the exception of an objection to subject-matter jurisdiction, if a party takes any action in a case that recognizes the case as being in court, this amounts to a general appearance.")); *see also Everett v. Vance*, 685 S.W.3d 495, 501 (Mo. App. W.D. 2023) (quoting *Int. of A.R.B.*, 586 S.W.3d at 859)).

For example, where the first action on the record of a tenant who was not personally served was to request a trial de novo, the tenant was held to have waived any challenge to the circuit court's jurisdiction because she had taken "affirmative action recognizing the case as being in court and seeking relief." *KNT Mgmt.*, 419 S.W.3d at 900. Another example of a general appearance conferring jurisdiction was when a party entered a purported limited appearance but failed to raise an immediate objection to personal jurisdiction and instead sought

---

[6] Rule 55.03 has since been amended to specify that a written limited entry of appearance also "may be further limited to a particular time or for a particular purpose within that proceeding or matter." Rule 55.03(b)(3).

9

monetary damages and dismissal on substantive grounds. *Everett*, 685 S.W.3d at 502. Likewise, a parent was held to have waived a personal-jurisdiction claim by entering a general appearance through filing a motion for determination as to a paternity judgment "without raising any personal jurisdiction challenge to the entry of that judgment or seeking in any manner to have it set aside for lack of personal jurisdiction." *Witherspoon v. Thurmond*, 642 S.W.3d 784, 788 (Mo. App. S.D. 2022). In yet another example, in a spousal support dispute, the date on which wife's attorney first appeared on the record with regard to husband's motion to modify was held to constitute a "general appearance waiving the necessity of any further effort at making personal service." *Willis v. Willis*, 50 S.W.3d 378, 392 (Mo. App. W.D. 2001).

Important to this appeal, in all of these examples, the party brought no jurisdictional challenge—nor received an adverse ruling on such a jurisdictional challenge—prior to taking the affirmative action that constituted waiver. *See id.*; *Everett*, 685 S.W.3d at 501; *Witherspoon*, 642 S.W.3d at 788; *KNT Mgmt.*, 419 S.W.3d at 900. Logically, the very premise of filing a timely motion to challenge jurisdiction is to prevent waiver. A defendant who has challenged jurisdiction and been denied does not waive personal jurisdiction by subsequently defending the case. *State ex rel. White v. Marsh*, 646 S.W.2d 357, 361 (Mo. banc 1983) (internal citation omitted). "A defendant, for example, may join other motions with a motion challenging jurisdiction over the person and, if the challenge is unsuccessful in the trial court, the defendant can defend on the merits without waiving the right to pursue the issue of personal jurisdiction on appeal." *Id.* (internal citation omitted).

Here, Mother first entered the modification proceeding through a limited appearance moving to dismiss for lack of personal jurisdiction. The trial court denied her motion. Mother then filed her motion to disqualify all judges of the 21st judicial circuit, in which she alleged an

10

appearance of impropriety and bias against her due to a professional negligence lawsuit she filed against a guardian ad litem from the prior modification proceeding. The trial court ruled that Mother's disqualification motion waived her personal-jurisdiction challenge because it raised matters beyond jurisdiction, thereby expanding her initial limited appearance to a general appearance.

The trial court erred in finding waiver. Because Mother preserved her personal-jurisdiction claim in her motion to dismiss, which was denied, Mother did not subsequently waive her claim by proceeding in her defense of the case on other grounds. *See* Rules 55.03(b)(1)–(3), 55.27(g)(1); *White*, 646 S.W.2d at 361; *Ball*, 638 S.W.3d at 47–48 (quoting *Int. of A.R.B.*, 586 S.W.3d at 859). Having timely raised her objection to personal jurisdiction and received an adverse ruling, Mother was free to defend on the merits. *See White*, 646 S.W.2d at 361. Arguably, her motion to disqualify also disputed the trial court's authority to hear the case, given that the relief she sought was to have the case presided over by a judge appointed from the Supreme Court or from another circuit court outside the St. Louis area. Regardless of the content of the motion to disqualify, however, Mother cannot be said to have waived her personal-jurisdiction claim through the motion, because she had already raised the jurisdictional issue at the first opportunity, preserving the claim, and was then compelled by court order to proceed on the merits. *See id.* Point One is granted in part, as will be more fully explained in the following discussion.

### 2. Point Two—The trial court did not misapply service Rule 54.21

"Rule 54 requires that service be made 'promptly' (i.e., with due diligence)[.]" *Brick v. Koeppen*, 672 S.W.3d 62, 67 (Mo. App. S.D. 2023). Specifically, Rule 54.21 provides as follows:

11

> The officer or other person receiving a summons or other process shall serve the same and make return of service promptly. If the process cannot be served it shall be returned to the court within thirty days after the date of issue with a statement of the reason for the failure to serve the same; provided, however, that the time for service thereof may be extended up to ninety days from the date of issue by order of the court.

Rule 54.21. As Mother correctly points out, Rule 54.21 means that a summons is not perpetually effective after its issuance by the court, but instead has a deadline of thirty days that may be extended up to ninety days measured from the date of issue. Rule 54.21; *New LLC v. Bauer*, 586 S.W.3d 889, 896 (Mo. App. W.D. 2019). Once a trial court has issued a summons, a plaintiff's failure to serve that summons within thirty days renders service ineffective unless the trial court extends the deadline. *New LLC*, 586 S.W.3d at 896 (internal quotation omitted); *see also Brick*, 672 S.W.3d at 64, 66–67 (noting plaintiff's failure to show he at least attempted to serve a summons until approximately six months after the summons was issued was held not to satisfy Rule 54.21's prompt service requirement and thus service was ineffective).

Here, Father filed his modification motion on July 2, 2020, and unsuccessfully attempted to serve Mother at her home address in St. Louis County. The trial court issued a summons on July 7, 2020, which was returned non-est.[7] At Father's request, the trial court issued an alias summons[8] on August 12, 2020, which was also returned non-est. In October of 2020, Father moved for service by publication pursuant to Rule 54.12, supported by an affidavit attesting to his multiple unsuccessful attempts to personally serve Mother. The trial court reviewed Father's motion and signed the order for service by publication on October 25, 2020, and on December 16, 2020, Father filed an Affidavit of Publication setting forth the details of the November

---

[7] Non-est is a shortened form of *non est inventus*, which is Latin for "he is not found." *See* Black's Law Dictionary (12th ed. 2024).

[8] An alias summons is a second summons that is issued by the circuit court when the first attempt to serve a summons is unsuccessful. *See* Black's Law Dictionary (12th ed. 2024).

publication. At Father's request, the trial court subsequently issued another alias summons on January 31, 2022, and Mother was personally served within thirty days of that summons on February 14, 2022.

Although Mother suggests that the time limits in Rule 54.21 should be measured only from the initial summons in the case, we disagree. Rule 54.21 specifies that prompt service must be had within thirty days *of the trial court's order issuing summons* and "may be extended up to ninety days from the date of issue by order of the court." Therefore, we measure each of Father's service attempts by the date of the relevant properly-issued summons. *See* Rule 54.21; *Brick*, 672 S.W.3d at 66–67; *New LLC*, 586 S.W.3d at 896. The trial court issued multiple summonses in this proceeding. Mother suggests that one or more of the summonses were "defective" but does not explain how. The record is clear that Mother stipulated to having been personally served on February 14, 2022, which was within thirty days of the trial court's summons issued on January 31, 2022. Mother thus fails to demonstrate noncompliance with Rule 54.21 that would require finding the trial court erred in asserting personal jurisdiction over her. *See* Rule 54.21; *Brick*, 672 S.W.3d at 66–67; *New LLC*, 586 S.W.3d at 896. Point Two is denied.

### 3. Child support arrearage must be made retroactive to the date of personal service

As recognized by both parties and the trial court, a monetary judgment of retroactive child support may only date back to the date of personal service or other date indicating the party's submission to the trial court's exercise of personal jurisdiction. *See* § 453.370.6. Section 453.370.6 governs service for a motion to modify and provides as follows:

> *The court shall have continuing personal jurisdiction over both the obligee and the obligor of a court order for child support or maintenance for the purpose of modifying such order.* Both obligee and obligor shall notify, in writing, the clerk of the court in which the support or maintenance order was entered of any change

13

of mailing address. If personal service of the motion cannot be had in this state, the motion to modify and notice of hearing shall be served outside the state as provided by supreme court rule 54.14. ***The order may be modified only as to support or maintenance installments which accrued subsequent to the date of personal service.*** For the purpose of 42 U.S.C. Section 666(a)(9)(C), the circuit clerk shall be considered the appropriate agent to receive notice of the motion to modify for the obligee or the obligor, but only in those instances in which personal service could not be had in this state.

§ 452.370 (emphases added). We first highlight the statute's clear language that the trial court maintained ***continuing personal jurisdiction*** over Mother from the prior 2019 modification proceeding for the purpose of modifying that order. *See id.* Second, we note that the statute sets the date of personal service as the date for which child support payments may be subject to modification. *See id.*; *see also Taormina v. Taormina*, 639 S.W.3d 482, 493 (Mo. App. W.D. 2021) (remanding for the trial court to limit retroactive spousal support to the date on which the party responsible for maintenance was personally served or otherwise entered the modification case pursuant to § 452.370); *Willis*, 50 S.W.3d at 391–92 (same). Therefore, because the trial court erred in awarding retroactive child support to the date of Mother's disqualification motion (April 21, 2020), as explained in our partial grant of Point One, we reverse the award of retroactive child support and remand for the trial court to adjust and recalculate its award to the date of personal service (February 14, 2022) as required by § 453.370.6. *See Taormina*, 639 S.W.3d at 493 (citing *Willis*, 50 S.W.3d at 391–92).

We next turn to Mother's related points on appeal disputing the overall award of child support.

B.     Points Six and Seven—Child Support Abatement

Mother asserts the trial court erred by not finding retroactive and future child support for T.S. and A.S. abated under § 452.340.5 because Father and the children failed to timely send documentation of college enrollment. "[A] trial court's decision to award retroactive child

14

support is within the trial court's 'sound discretion' and will not be disturbed absent an abuse of discretion." *Morgan*, 497 S.W.3d at 375 (internal quotation omitted). We find no error in the trial court's judgment.

"Generally, child support terminates when a child reaches the age of eighteen." *Halper v. Halper*, 604 S.W.3d 904, 910 (Mo. App. E.D. 2020) (internal citation omitted). "Section 452.340.5 extends the 'continuation of child support benefits past the age of eighteen if the child enrolls in an institution of vocational or higher education by the October following their graduation from high school and if certain attendance, academic and notice requirements are met.'" *Id.* (internal quotation omitted). Missouri courts are intended to "construe the provision of [§] 452.340.5 liberally to be consistent with the public policy of promoting the pursuit of higher education." *Id.* (internal quotation omitted). "Although [§] 452.340.5 requires the child to provide each parent with documentation of grades, credits, and coursework at the beginning of each semester, the statute specifically states that 'child support *may* terminate' if the documents are not provided." *Klein v. Klein*, 475 S.W.3d 194, 200 (Mo. App. W.D. 2015) (quoting § 453.340.5). "Termination of child support is not required." *Id.* (holding the trial court did not err in abating, rather than terminating, the parent's child support obligation for the semester for which documents were not received); *see also Halper*, 604 S.W.3d at 911 (internal quotation omitted) (noting the statutory language that child support *may* terminate "implies alternate possibilities that the conferee of the power has discretion in the exercise of that power").

### 1. Point Six—Child Support for T.S.

We address Mother's claim as to child support for T.S. first in Point Six. T.S. turned eighteen, graduated high school, then began college prior to the October 2022 trial. Mother disputed whether T.S. provided her a college class list or other official school document to

15

indicate his enrollment and trigger his eligibility for continued parental support. *See* §
452.340.5. The trial court disbelieved Mother's testimony, which it was free to do as the fact-
finder, and found she had knowledge that T.S. was attending college. The trial court further
noted the permissive language of 452.340.5, such that even if T.S. had failed to timely produce
all required documents, the trial court ***may*** find child support arrearage abated and ***may*** terminate
reinstatement of support but has discretion to decide otherwise based on the circumstances. *See
id.*; *Halper*, 604 S.W.3d at 911; *Klein*, 475 S.W.3d at 200. The trial court thus did not misapply
§ 452.340.5 by exercising its discretion to award retroactive and future child support for T.S.
Point Six is denied.

### 2. Point Seven—Child Support for A.S.

Turning to Point Seven, child support for A.S., we affirm on similar grounds. The record
shows A.S., age nineteen at the time of trial, was enrolled as a sophomore in college and had
spent the summer serving in the U.S. military via the naval ROTC program. Mother disputed
whether Father or A.S. provided timely documentation of his enrollment, class schedule, ROTC
scholarship, and transcripts for certain periods. The trial court found the evidence at trial
indicated Mother knew A.S. was attending college on a ROTC scholarship because Mother and
A.S. had discussed her offer to provide financial assistance. To the extent that A.S. failed to
provide certain official college documents until Spring of 2022 despite enrolling in Fall of 2021,
the trial court acted within its discretion to find no abatement or termination of past or future
child support was warranted under the circumstances. *See* § 452.340.5; *Halper*, 604 S.W.3d at
911; *Klein*, 475 S.W.3d at 200. Point Seven is denied.

### III. Point Four—Rule 73.01(c) Findings of Fact and Conclusions of Law

In Point Four, Mother alleges the trial court misapplied Rule 73.01(c) by failing to issue
findings of fact and conclusions of law on all requested issues, including service of process,

personal jurisdiction, the parties' and their children's current financial resources, and alleged discovery violations. Because Mother's filing was more accurately a pre-trial statement of proposed findings of fact and conclusions of law that failed to put the trial court on notice as to the contested issues, and because the trial court's judgment sufficiently set forth detailed findings of facts and conclusions of law on the key contested issues, we deny the point.

Pursuant to Rule 73.01(c), the trial court "may, or if requested by a party shall, include in the opinion findings on the controverted material fact issues specified by the party." Rule 73.01(c); *McDermot v. Doner*, 637 S.W.3d 402, 412 (Mo. App. S.D. 2021). The party's Rule 73.01(c) request must be made prior to trial and cannot be a mere "general" request. *McDermot*, 637 S.W.3d at 412 (internal quotation omitted) ("[A] general request for findings of fact and the submission of proposed findings to aid the trial court are insufficient to require the trial court to make specific findings under Rule 73.01(c)."). Rather, the goal is to put the trial court on notice as to the contested issues: "[I]t is the parties' duty to specifically request findings of fact and conclusions of law, identifying the issues they wish the court to decide[;] [m]erely submitting proposed findings to aid the court does not trigger the [trial] court's duty to make findings of fact and law." *Id.* (quoting *Hammons v. Ehney*, 924 S.W.2d 843, 849 (Mo. banc 1996)).

Further, when an appellate court is reviewing a trial court's judgment, Rule 73.01(c) also provides that "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." In this way, "Rule 73.01(c) mandates that we consider that the trial court implicitly made such findings of fact in accordance with its result in modifying the . . . provisions of the dissolution judgment." *Morgan*, 497 S.W.3d at 370 (internal quotation omitted).

17

In the case at bar, Mother submitted a 45-page, 65-paragraph document captioned as a request for findings of fact and conclusions of law. The filing contained Mother's recitation of her own anticipated proposed findings of fact and conclusions of law, even though the trial had not yet occurred. The filing also extended far beyond the stipulated issues to be tried.

Consequently, Mother's filing did not coherently put the trial court on notice of the specific contested issues as required by Rule 73.01(c). *See McDermot*, 637 S.W.3d at 412. We agree with Father's description of Mother's filing as a proposed judgment masquerading as a request for findings, which did not obligate the trial court to issue Rule 73.01(c) findings as to every proposed fact and legal conclusion Mother raised. *See id.* (internal citations omitted).

Notwithstanding Mother's insufficient Rule 73.01(c) filing, the trial court did issue detailed findings of facts and conclusions of law on the contested issues in its final judgment of modification. Most importantly for Mother, the trial court issued sufficient findings of fact and conclusions of law as to the contested issues relating to service, personal jurisdiction, and waiver so as to support meaningful appellate review, as addressed above in our discussion of Points One and Two. Indeed, Mother would be unable to show prejudice in any alleged failure of the trial court's judgment on these grounds as we have granted her relief as to setting retroactive child support back to the date of personal service rather than to the date of alleged waiver. *See Paulson v. Dynamic Pet Prods., LLC*, 560 S.W.3d 583, 591 (Mo. App. W.D. 2018) (internal quotation omitted) ("[W]e will not reverse a judgment because of error which is not prejudicial to the appellant."). Mother has not otherwise demonstrated reversible error in the trial court's issuing of findings of facts and conclusions of law in its final modification judgment. *See id.* Point Four is denied.

18

**IV. Points Three, Five, Nine, and Twelve—Waived by Stipulation or Abandonment at Trial**

Several of Mother's points on appeal involve issues that Father maintains were either stipulated to or wholly abandoned at trial, thereby waiving appellate review.

"Issues abandoned at trial are not before the reviewing court." *Stiens v. Stiens*, 231 S.W.3d 195, 189–99 (Mo. App. W.D. 2007) (internal citation omitted). "A party cannot complain on appeal about an alleged error in which that party joined or acquiesced at trial." *In re Marriage of Cunningham*, 571 S.W.3d 688, 695 (Mo. App. S.D. 2019) (internal quotation omitted). "A motion may be waived or abandoned by failing to proceed with respect to it, or by continuing before the determination of the motion in a manner which is not consistent with the object of the motion." *Paulson*, 560 S.W.3d at 590 (internal quotation omitted). Additionally, "[a] party waives any objection to the admission of evidence that it has stipulated [to.]" *State ex rel. Scherschel v. City of Kansas City*, 470 S.W.3d 391, 400 (Mo. App. W.D. 2015) (internal quotation omitted); *but see Holt v. ZX Int'l, Inc.*, 689 S.W.3d 200, 204 n.6 (Mo. App. W.D. 2024) (quoting *Parr v. Breeden*, 489 S.W.3d 774, 779 (Mo. banc 2016) (clarifying that "[c]ourts are not bound by stipulations or concessions as to questions of law")). For purposes of waiving appellate review, "[p]arties are bound by the position they took in the trial court and will not be heard on a different theory on appeal." *Barner v. Mo. Gaming Comm'n*, 48 S.W.3d 46, 50 (Mo. App. W.D. 2001). "We will not 'convict a trial court of error on an issue that was not put before the trial court to decide.'" *Loutzenhiser v. Best*, 565 S.W.3d 723, 730 (Mo. App. W.D. 2018) (quoting *Barner*, 48 S.W.3d at 50).

With these propositions of law in mind, we review each point in turn.

A.      Point Three—Educational Accounts Transfer

In Point Three, Mother argues the trial court misapplied the law by entering an allegedly *ex parte* pre-trial order transferring custody of two of the children's educational accounts to Father.  Father counters that Mother waived any appellate challenge to the account transfers by stipulating to this outcome at trial.  We agree with Father.

At trial, Mother agreed to the transfer of the children's 529 college savings accounts to Father for purposes of meeting the children's educational expenses.  Mother further stipulated to limiting the issues at trial solely to child support and attorneys' fees.  Having so agreed, Mother cannot now take a different position on appeal and assign trial court error as it relates to the transfer of these accounts.  *See Cunningham*, 571 S.W.3d at 695 (internal quotation omitted); *Stiens*, 231 S.W.3d at 189–99 (internal citation omitted).

Even had Mother not so stipulated, she would be unable to show prejudicial deprivation of her property inasmuch as both the prior and final modification judgments designate the accounts to be used for the children's education expenses.  *See Paulson*, 560 S.W.3d at 591 (internal quotation omitted) ("[W]e will not reverse a judgment because of error which is not prejudicial to the appellant.").  Furthermore, the record shows Mother had notice of the hearing and was granted a continuance, undermining her claim that the trial court deprived her of due process.  The trial court ordered the account transfer as a temporary measure to ensure the children's payment and enrollment in college during the ongoing modification proceeding.  *See Morgan*, 497 S.W.3d at 363 (citing *Love*, 75 S.W.3d at 754) (noting the trial court is in a superior position to weigh the evidence and render a judgment in the best interests of the child).  Point Three is denied.

20

B.    Point Five—Educational Expenses Redundancy

In Point Five, Mother argues the trial court misapplied the law by failing to consider other college savings accounts created during the marriage, scholarships, and grants available to the children when awarding child support because these financial resources show that making her pay child support towards their educational expenses was impermissibly redundant. Although not expressly a waiver issue, this point relates closely to the preceding Point Three and involves a misunderstanding of the record that leaves no preserved claim of error.

The point fails on multiple grounds. First, no evidence was adduced at trial regarding the marital accounts or grants. Furthermore, only the existence of certain scholarships were briefly discussed at trial, and no exhibits pertaining to scholarships were offered or admitted as evidence. Mother cannot expand the reviewable record by including additional evidence in her Substituted Appendix. *Neisler v. Keirsbilck*, 307 S.W.3d 193, 197 (Mo. App. S.D. 2010) (citing Rule 84.04(h) (noting copies of exhibits not introduced at trial do not become part of the record on appeal merely by being included in an appendix)).

More critically, and also in explanation for why such alleged redundancy issues were not addressed at trial, Mother's point on appeal—and her claim that the trial court refused to allow her to present such evidence—misconstrues the record and the trial court's judgment. Specifically, the record reflects that the parties stipulated to trying only limited issues concerning child support and attorneys' fees. Regarding child support, the trial court never ordered or adjudged Mother to be financially responsible for the children's educational expenses through an award of child support such that potential redundancy in the source of payment for such expenses would be relevant. *See Sansone*, 679 S.W.3d at 14 (internal citations omitted) (recognizing, for example, that it is unreasonable to obligate a parent to pay for a child's living expenses when that parent is already paying college fees that cover living expenses). On the

21

contrary, the trial court explicitly noted that the children's available resources to pay educational expenses, such as other marital accounts and scholarships, were not relevant to issues being tried. In pre-trial hearings and orders, the trial court established that Mother was not going to be assessed child support to pay for the children's educational expenses; rather, the custodial transfer of the children's 529 college savings accounts—to which the parties stipulated at trial— was intended to resolve the issue of the children's educational expenses. As the modification judgment states, the children's 529 college savings accounts are to be used for payment of the children's educational expenses, and only if those accounts are exhausted prior to their emancipation should the parties seek parental court-ordered contribution towards educational expenses.

Because the award of child support does not obligate Mother to contribute to the children's educational expenses, which instead are to be covered by exhausting the children's educational accounts, Mother's point on appeal attempts to raise an issue outside the record and fails to demonstrate reversible error on the grounds alleged. *See Marvin*, 682 S.W.3d at 798 (internal citation omitted) (noting the appellant bears the burden to identify reversible error). Point Five is denied.

C.     Point Nine—Financial Discovery

In Point Nine, Mother asserts the trial court misapplied the law as to modifying child support by refusing to hear her motion seeking discovery as to Father's then-current financial information via 2021 tax returns because such denial violated the provisions set forth in § 452.370 pertaining to trial court's requirement to consider the current financial resources of the parties when making child support determinations. Moreover, Mother alleges the trial court misapplied the law by refusing to hear her discovery motions pertaining to father's financial

22

resources encompassed by Local Rule 68.5 governing the mandatory exchange of certain documents in family court cases.

Dispositive of this point is Father's argument that Mother waived review by taking a contrary position at trial. *See Cunningham*, 571 S.W.3d at 695 (internal quotation omitted); *Stiens*, 231 S.W.3d at 198–99 (internal citation omitted). At trial, both parties stipulated to using the 2020 tax returns for the Form 14 and Rule 88.01 calculations, as neither Mother nor Father had completed their 2021 tax returns. *See Scherschel*, 470 S.W.3d at 400 (internal citation omitted) (noting a party waives objection to stipulated evidence). The transcript is replete with attempts by the trial court to ensure that the parties were in fact in agreement about using the 2020 tax returns as the best option, despite Mother's contradictory testimony as to whether such an agreement was a prior or new stipulation. Mother reiterated her consent to the trial court using both her and Father's 2020 tax returns, thereby abandoning her prior motion. *See Paulson*, 560 S.W.3d at 590 (internal citation omitted) (noting a party waives or abandons a motion by failing to proceed with it at trial). We will not entertain an allegation of error that was self-invited. *See Cunningham*, 571 S.W.3d at 695 (internal quotation omitted). In reviewing a trial court's application of the two-step procedure for calculating child support, if the trial court's application of the procedure is sound, then we will interfere with the child-support award only if the trial court abused its discretion by ordering an amount that is against the logic of the circumstances or arbitrary or unreasonable. *Girgis*, 676 S.W.3d at 513 (internal quotation omitted). A thorough review of record reflects the trial court did not abuse its discretion here. *See id.* Point Nine is denied.

D.    Point Twelve—Healthcare Expenses

Point Twelve argues the trial court erred in crediting Father with payment of the children's healthcare because such costs were either covered by A.S.'s ROTC scholarship or reimbursed from T.S.'s college account, respectively.

This point also fails on multiple grounds.  The trial court expressly noted during trial that the parties had chosen to limit the issues to be tried to exclude evidence of payments of the children's medical expenses, aside from using the healthcare premiums in the Form 14.  On appeal, Mother is held to the same position she took at trial.  *See Barner*, 48 S.W.3d at 50.  The trial court also pointed out that Mother first sought to exclude all evidence of medical expenses, to which Father agreed, then inconsistently tried to introduce such evidence.  To the extent that Mother now tries to introduce yet further new evidence related to medical expenses on appeal in her Substituted Appendix, such expansion of the record is not permitted under the rules of appellate procedure.  *See Neisler*, 307 S.W.3d at 197 (citing Rule 84.04(h) (noting copies of exhibits not introduced at trial do not become part of the record on appeal merely by being included in an appendix)).  Specific claims relating to medical expenses were not part of the modification proceeding before the trial court, thus they are not before us on appeal.  *See Loutzenhiser*, 565 S.W.3d at 730.  Point Twelve is denied.

## V.    Points Eight, Ten, Eleven and Thirteen—Parental Income Calculations

Mother brings four points of error alleging the trial court erred in determining the parental income as used in the calculation of child support.  Consistent with the overarching standard of review, this Court "will not substitute [its] judgment for that of the [trial] court absent a manifest abuse of discretion, and [it] will not disturb an award of child support unless the evidence is 'palpably insufficient' to support it.'"  *Girgis*, 676 S.W.3d at 514 (internal

24

quotation omitted); *see also Sansone*, 679 S.W.3d at 13 (internal quotation omitted). As detailed in the following discussion, we affirm the trial court's judgment as to all remaining points.

A.    Points Eight, Ten, and Eleven—Mother's Form 14 Income

**1.    Point Eight—Mother's 2017 Loan Application**

In Point Eight, Mother posits the trial court erred in admitting Mother's 2017 Uniform Residential Loan Application (the Loan Application) because the five-year-old evidence was stale and too remote to be used as evidence of her current income, thus the trial court erred in its child-support calculation.

We find Mother misconstrues the trial court's record and judgment and thus identifies no reversible error. *See Marvin*, 682 S.W.3d at 798 (internal citation omitted) (noting the appellant bears the burden to identify reversible error). The Loan Application was introduced solely as impeachment evidence to show Mother made inconsistent statements. "It has long been the rule in Missouri that on cross-examination a witness may be asked any questions which tend to test his accuracy, veracity or credibility or to shake his credit by injuring his character." *Mitchell v. Kardesch*, 313 S.W.3d 667, 675, 682 (Mo. banc 2010) (internal quotation omitted) (noting this may include introducing extrinsic evidence when more probative than prejudicial). Nothing in the record suggests the Loan Application was used for any other purpose. Immediately after noting Mother's widely-ranging income reporting over the years, including that Mother's monthly income on the 2017 Loan Application was $20,126, the trial court observed that Mother's testimony was "not credible in that [she] would repeatedly testify in the extreme (always, never, etc.) and then back[-]track when confronted with conflicting evidence." Even had the trial court considered the Loan Application when determining Mother's Form 14 income, Mother would not be able to show how the old income information prejudiced her because the trial court only imputed to her a monthly income of $8,000, which is less than half of the 2017

25

income reflected in the challenged evidence. *See Paulson*, 560 S.W.3d at 591 (internal quotation omitted) ("[W]e will not reverse a judgment because of error which is not prejudicial to the appellant."). Finding no trial court error, we deny the point.

### 2. Point Ten—Wage Surveys for Imputing Mother's Income

In Point Ten, Mother contends that the trial court erred in using wage surveys for purposes of imputing her Form 14 income to calculate child support. Mother multifariously challenges both the imputation of income and the use of the wage surveys, but we exercise our discretion to review the point on its merits. *See Crisp v. Missouri Sch. for Deaf*, 681 S.W.3d 650, 659 (Mo. App. W.D. 2023) (internal citation omitted) ("We may exercise our discretion to address the merits of each claim in a multifarious point relied on when we can readily discern and separate the independent claims of error asserted in the point.").

"Child support is calculated by the trial court using the Missouri Supreme Court's Form 14 along with its Directions and Comments for Use." *Harris v. Harris*, 655 S.W.3d 33, 38 (Mo. App. W.D. 2022) (internal citation omitted). "Form 14 considers the respective parents' incomes, and the Directions and Comments provide that a parent's gross income may be based on income imputed to that parent if the parent is unemployed or found to be underemployed." *Id.* (internal citation omitted). Rule 73.01(c) mandates that we interpret the trial court's modification judgment as implicitly making the necessary findings of fact in accordance with the result reached. *Morgan*, 497 S.W.3d at 370 (internal quotation omitted).

According to Comment H to Line 1 of Form 14, when determining whether to include imputed income and, if so, the amount to include in a parents gross income, a trial court "shall consider all relevant factors" of which it lists seven, including the case background. *Harris*, 655 S.W.3d at 38 (quoting Form 14 Line 1 Comment H). Particularly relevant here, "[w]hen imputing income based on a parent's occupational qualifications and employment opportunities

26

in the community, the court or administrative agency may take judicial notice and consider the statistical records maintained by the Bureau of Labor Statistics or the Missouri Economic Research and Information Center on the Internet." Form 14 Line 1 Comment H.

Here, the trial court heard Mother's testimony about her work as an immigration attorney and reviewed her 2022 statement of income and expenses, 2020 tax returns, and past income reports. During trial, Mother gave inconsistent testimony about the ups and downs in her legal career and the impact of COVID-19 and national immigration policies, and she expressed wanting to pay child support while simultaneously disputing paying child support. The trial court held that Mother's testimony was not credible and concluded that it needed to impute income to her pursuant to Form 14. Although Mother maintains the trial court failed to make a threshold finding that she was underemployed in an effort to avoid paying child support, Missouri courts have rejected the claim that there is a requisite threshold finding of unemployment or underemployment before income can be imputed. *State ex rel. Stirnaman v. Calderon*, 67 S.W.3d 637, 639–40 (Mo. App. W.D. 2002) (internal quotation omitted) (finding no legal authority for the proposition that there must be an express finding of unemployment or underemployment as a precursor to imputing income). Even were such finding necessary, we would attribute it to the trial court here under our Rule 73.01(c) mandate to imply findings made in accordance with the judgment when supported by the record. *See Morgan*, 497 S.W.3d at 370 (internal citation omitted). It is clear from the record that the trial court found it necessary under the Form 14 guidelines to impute income and to rely on additional wage data as expressly permitted by the Supreme Court. *See* Form 14 Line 1 Comment H. The trial court relied on both the mean monthly wage of $10,578 for attorneys in Missouri as reported by the Missouri Economic Research and Information Center as well as the mean monthly wage of $10,722 for

attorneys in the greater St. Louis area as reported by the Bureau of Labor Statistics—the two surveys for which Form 14 Line 1 Comment H expressly states the trial court may take judicial notice. Ultimately, the trial court imputed Mother with $8,000 in monthly income, which is significantly less than the mean wage for either data set. Accordingly, Mother cannot prevail in arguing that the trial court's inclusion of such wage data prejudiced the outcome of the modification judgment. *See Paulson*, 560 S.W.3d at 591 (internal quotation omitted) ("[W]e will not reverse a judgment because of error which is not prejudicial to the appellant."). Point Ten is denied.

### 3. Point Eleven—Alleged "Reverse Engineering" of Mother's Income

In Point Eleven, Mother claims the trial court misapplied the law when calculating child support because it considered prejudicially improper statements from Father's attorney that Mother was underreporting her income and that "reverse engineering" of her expenses was required to determine Mother's income.

First and foremost, Mother failed to preserve this point for appellate review because she did not object to Father's attorney's "reverse engineering" argument during trial. *See Girgis*, 676 S.W.3d at 515 (internal citation omitted) (noting an appellant's failure to object at trial fails to preserve the claim for review).

Interestingly, even though Mother did not object, the trial court in fact interrupted Father's attorney to question the relevance of this line of inquiry. Specifically, the trial court inquired "as to the relevance as to what [Mother's] expenses are" because it was "only calculating the Form 14 which is based on income." The trial court's questioning demonstrates it duly considered only the relevant evidence and did not give countenance to the "reverse engineering" theory. Therefore, Mother has not shown reversible error. *See Marvin*, 682 S.W.3d at 798 (internal citation omitted). In particular, Mother has not demonstrated that the

28

trial court gave any weight to the concept of "reverse engineering" in arriving at Mother's Form 14 income determination and corresponding award of child support. *See id.* Point Eleven is denied.

B.   Point Thirteen—Father's Form 14 Income

In Point Thirteen, Mother asserts Father's Form 14 Line 1 underrepresents his monthly gross income based on his 2020 tax returns. Specifically, Mother argues Father's Form 14 monthly gross income should be increased by the amounts he contributed to his self-employment fund (SEP) and health savings account (HSA) because such contributions represent income that could go towards supporting his children. Mother also maintains Father's Form 14 monthly gross income should be increased by the amount of rent he deducted as a business expense, because the location was actually his residence rather than his business.

First, Mother's point is impermissibly multifarious for raising multiple points of error. Notwithstanding, "[w]e may exercise our discretion to address the merits of each claim in a multifarious point relied on when we can readily discern and separate the independent claims of error asserted in the point." *Crisp*, 681 S.W.3d at 659 (internal citation omitted).

Second, as Father correctly notes, Mother's citations to the record are wholly inaccurate, improperly forcing this Court to scour Father's tax returns to formulate the basis for Mother's argument. *See* Rule 84.04(e) (requiring all factual assertions in the argument to have specific page references to the relevant portion of the record on appeal); *Marvin*, 682 S.W.3d at 797 (internal quotation omitted) (noting "[a]n appellate court's role is to review specifically challenged trial court rulings, not to sift through the record to detect possibly valid arguments"). Mother's point could be denied on this basis alone. *See Marvin*, 682 S.W.3d at 797 (internal citation omitted).

29

Nevertheless, Father's 2020 tax returns are part of the trial record and reflect the contributions he made to his SEP and HSA accounts identified by Mother. In arriving at its final judgment, the trial court rejected Father's proposed Form 14 and substituted its own, attributing more income to Father. *See Girgis*, 676 S.W.3d at 513 (quoting *Schaberg*, 637 S.W.3d at 525) (noting a trial court "may accept the proposed Form 14 calculations from the parties or reject both parties' proposed Form 14s and prepare its own"). "The income for a self-employed parent, like Father, generally is considered to be the 'net profit or net loss on the schedules filed as part of the parent's federal income tax return.'" *Id.* at 514 (quoting Form 14 Line 1 Comment I.). The trial court used the exact adjusted gross income data from Father's 2020 tax returns—evidence to which both parties stipulated using for this purpose—and subtracted his capital gains because the parties failed to present any evidence regarding the requisite considerations for including such income in presumed child support. *See* Form 14 Line 1 Comment E (listing the relevant factors for determining whether to include capital gains). Just as the trial court noted no evidence was presented regarding the inclusion of capital gains, warranting their exclusion, the trial record contains no mention of Father's SEP or HSA contributions. Therefore, because Mother did not preserve these issues at trial, the trial court did not err in not referencing them in its modification judgment. *See Cunningham*, 571 S.W.3d at 695 (internal quotation omitted).

Furthermore, even were we to consider Mother's argument with respect to these contributions, Mother offers no availing authority for her proposition that such contributions should count towards Father's Form 14 gross income. *See Marvin*, 682 S.W.3d at 798 (internal citation omitted) (requiring arguments be supported by relevant legal citations). Failure to support an argument with relevant legal authority is a sufficient basis to deny the point. *See id.* Mother attempts to rely on *Roberts v. Roberts*, 847 S.W.2d 108 (Mo. App. W.D. 1992), to justify

30

considering these contributions as income. In that distinguishable case, however, the particular facts of that parent's self-employment warranted attributing retirement contributions to his income because the record showed he had control of the allocation of the corporation's available cash in regards to wages or salary and other benefits. *Id.* at 109. No such similar facts were shown at trial here for Father, nor were the contributions demonstrated to be income. More generally, Missouri courts have consistently observed that such contributions, reported for tax deduction purposes, are usually not considered income, because there is no discernable way in which such contributions would be available to help satisfy child support payments. *See Severn v. Severn*, 567 S.W.3d 246, 262 (Mo. App. W.D. 2019) (internal citations omitted) (declining to count contributions to a deferred compensation plan as income).

Turning to issue of rent, Mother argues the trial court's Form 14 gross income for Father was erroneous because Father improperly deducted rent as a business expense while he was using the subject property as a residence. The record contains substantial evidence supporting the trial court's judgment. *See Morgan*, 497 S.W.3d at 363 (citing *Love*, 75 S.W.3d at 754). In his 2020 tax returns, Father did include some rent as income. Additionally, Father testified about the transition from using his residence as his business address to the construction of a new building on the multi-acre premises to be used solely for the business. We will not reweigh the evidence nor supersede the trial court's credibility determinations. *See id.* at 377 (internal citation omitted). For all the aforementioned reasons, Point Thirteen is denied.

## Conclusion

The judgment of the trial court is affirmed in part and reversed in part. We remand for the trial court to recalculate its award of retroactive child support to the date of personal service (February 14, 2022). The judgment in affirmed in all other respects.

_____
Rebeca Navarro-McKelvey, J.

Thomas C. Clark, II., C.J., and
Charles H. McKenzie, Sp.J., concur.